[L. A. No. 632.  Department One.—July 20, 1900.]

FARMERS' EXCHANGE BANK OF SAN BERNARDINO, Respondent, v. ALTURA GOLD MILL AND MINING COMPANY et al., Defendants. C. E. MAUD and G. O. NEWMAN, Appellants.

PROMISSORY NOTE—INDORSEMENT—WAIVER OF DEMAND, PROTEST, AND NOTICE—WORDS STAMPED ON NOTE—JOINT AND SEVERAL CONTRACT—PRESUMPTIONS.—The words, "For value received, I hereby waive demand and notice of demand, protest, and notice of protest and nonpayment," when not written over the name of the first indorser of a promissory note by himself, but printed upon the back of the note with a rubber stamp before any of the names of a number of required accommodation indorsers were written thereupon, are not limited to the first of such indorsers, but must be deemed a part of the note, and, notwithstanding the use of the singular number, must be presumed to be the joint and several contract of all of the indorsers, who must be presumed to have read the words and to have adopted them as their contract; and the bank discounting the note, whose presi-

dent had affixed the stamp, had a right to assume, on return of the note thus signed, that each and every indorser was severally bound by the waiver.

ID.—EVIDENCE—INTENTION OF INDORSER IMMATERIAL.—Evidence of the intention of an indorser not to waive presentation or notice, who is found on sufficient proof to have attached his signature under the stamped waiver, is not admissible, and, if admitted without objection, is irrelevant and immaterial, and cannot affect or change his liability.

ID.—ACTION UPON LOST NOTE—TENDER OF INDEMNITY BOND—OFFER IN COMPLAINT—FILING—SERVICE—COSTS.—Where an indemnity bond against a lost note is not tendered before suit, but is offered in the complaint and filed with it, it must be deemed tendered when the complaint is served upon the defendant, and if defendant then offers to pay or to let judgment be taken, plaintiff cannot recover costs; but if the defendant persists in making defense to the action, and plaintiff recovers, he should recover all costs thereafter accruing.

ID.—UNSUCCESSFUL DEFENSE—RECOVERY OF COSTS—INSUFFICIENT RECORD UPON APPEAL.—Where the action upon the lost note was unsuccessfully defended after tender of an indemnity bond in the complaint, and the record upon appeal does not show what costs had accrued at the time the bond was filed, or when it was tendered, the judgment for costs will not be disturbed upon appeal.

APPEAL from a judgment of the Superior Court of San Bernardino County. Frank F. Oster, Judge.

The facts are stated in the opinion.

E. B. Stanton, and John G. North, for Appellants.

A surety cannot be held beyond the express terms of his contract (Civ. Code, sec. 2836), and the waiver in the singular number over the name of the first indorser is his contract only. (*Central Bank v. Davis*, 19 Pick. 373; 2 Daniel on Negotiable Instruments, 4th ed., sec. 1109; Tiedeman on Commercial Paper, sec. 363.) There can be no waiver without an intent to waive, and such intention of subsequent indorsers was properly disproved. (*San Bernardino etc. Co. v. Merrill*, 108 Cal. 494.) The evidence of intention was received without objection, and must have full weight. (Civ. Code, sec. 1036; *Newberry v. Lee*, 3 Hill, 523.) There can be no recovery of costs because the indemnity bond was not tendered before suit. (*Randolph v. Harris*, 28 Cal. 562.[1])

---

[1] 87 Am. Dec. 139.

F. W. Gregg, for Respondent.

"A promise made in the singular number, but executed by several persons, is presumed to be joint and several." (Civ. Code, sec. 1660.) A printed waiver is part of the note, and binds every name indorsed on the paper, unless some special indorser expressly excepts himself from the provisions of the waiver. (Randolph on Commercial Paper, sec. 106; *Smith v. Pickham*, 8 Tex. Civ. App. 326; *Iowa Valley State Bank v. Sigstad*, 96 Iowa, 491; *Farmers' Exchange Bank v. Ewing*, 78 Ky. 264[2]; *Polo Mfg. Co. v. Parr*, 8 Neb. 379[3]; *Portsmouth Sav. Bank v. Wilson*, 5 App. D. C. 8; *Phillips v. Dippo*, 93 Iowa, 35[4]; *Hull v. Myers*, 90 Ga. 674.) A written contract of waiver may bind more than one indorser. (*Parshley v. Heath*, 69 Me. 90.[5]) Evidence of the intention of an indorser is wholly inadmissible, and irrelevant and immaterial. (3 Randolph on Commercial Paper, sec. 1364.) To escape liability for costs defendant should have made an offer of judgment. (Code Civ. Proc., secs. 997, 1025, 2074.) The costs should be awarded or apportioned according to the equity of the case. (*Randolph v. Harris*, 28 Cal. 566, 567.[6])

CHIPMAN, C.—Action on promissory note for five hundred dollars, dated July 1, 1895, and payable six months after date, executed by defendant Hutson to defendant the mining company, and sold to plaintiff before its maturity. Plaintiff had judgment, from which defendants Maud and Newman appeal and come here on bill of exceptions. It appears that plaintiffs sent the note to the Orange Growers' Bank of Riverside for collection; the latter bank subsequently remailed it to plaintiff bank, and it was stolen from the United States postoffice and never after recovered. The form of the note and its indorsements were proved by parol as a lost instrument.

1. The principal question is whether by the indorsement on the note appellants "expressly waived all rights to demand notice of payment, protest, and notice of protest, and nonpay-

---

[2] 39 Am. Rep. 231.
[3] 30 Am. Rep. 830.
[4] 57 Am. St. Rep. 254.

[5] 31 Am. Rep. 246.
[6] 87 Am. Dec. 139.

ment of said note," as found by the court. It appeared from
the evidence that defendant Hutson made the note payable to
the mining company; that defendant Otis, president of the
company, requested plaintiff to discount it for the purpose of
raising funds for the company; plaintiff consented to do so on
condition that Otis would procure the indorsement of three
or four persons, stockholders of the company, whose financial
standing had been inquired into; Otis agreed to get the indorse-
ments, whereupon the president of plaintiff bank stamped at
the top of the back of the note with the rubber stamp used in
the bank for that purpose an impression in red ink reading as
follows: "For value received, I hereby waive demand and notice
of demand, protest, and notice of protest, and nonpayment."
Defendant Otis testified that the note was indorsed by the com-
pany and that he took it and procured the other indorsements.
It was also testified that the signatures on the back of the note
were as follows:

| | |
|---|---|
| "Geo. E. Otis,<br>"C. E. Maud, | Oct. 1st, 1895. |
| "A. P. Morse, | Oct. 3d, 1895. |
| "T. W. Duckworth, | Oct. 4th, 1895. |
| "G. O. Newman, | Oct. 8th, 1895." |

The note was then taken to plaintiff by Otis and delivered
on October 11th, and the face of the note and the accumulated
interest paid him by plaintiff, and the money was passed to
the credit of the mining company, which it appeared kept its
account with plaintiff, and was checked out in due course.

Defendant Otis, on behalf of plaintiff, testified: "I distinctly
remember a waiver of demand, notice, and nonpayment at the
end of the note," and he stated the circumstances which im-
pressed the fact upon his memory. He further testified: "The
stamp was affixed above the indorsements of all the indorsers
upon the note. It was on the back of the note and at one
extremity of it, and the indorsements were underneath that and
were made after the stamp was affixed." This evidence was
fully corroborated by the testimony of Mr. Drew, the president
of plaintiff bank, who remembered distinctly having placed the

stamp on the back of the note and at its top before handing it to Mr. Otis. He also instructed Mr. Otis to have the date given by each indorser when he signed, which it seems was done. Other witnesses also corroborated this evidence.

Appellant Maud testified: "Judge Otis presented me the note signed by Mr. Hutson, and he appended his signature and I appended mine. There was at that time no waiver of protest or indorsement of any kind on the note. Nothing was said about my waiving presentation or notice of protest or demand. When I indorsed my name on the note I did not intend to waive presentation or notice. When I signed my name there was no waiver at all attached to the note." Appellant Newman was not quite so positive, but he testified: "I am pretty sure there was not anything else on the back of the note. I surely haven't the least recollection that anything of that kind was on the note," referring to the waiver. Later in his examination he expressed himself as positive that there was no rubber stamp impression on the note when he signed it. It is not the province of this court to decide which of these witnesses gave the facts as they existed; that duty devolved upon the trial court, and its finding, the conflict in the evidence being so obvious, is conclusive upon us. We do not think that the statement of appellant Maud that he did not intend to waive presentation or notice can change his liability. The court having found on sufficient evidence that the indorsement was there when he attached his signature, the intention of the indorser cannot be received as changing the effect of the indorsement. The evidence was inadmissible, but being admitted without objection it still was irrelevant and immaterial. (2 Randolph on Commercial Paper, sec. 1364.) Besides, as the court was convinced that the witness Maud was mistaken in one important fact testified to by him, the court had the right to reject the statement as to his intention. If the waiver was there when Otis signed, so also must it have been there when Maud signed, for the latter testified that they signed at the same time, and the date is the same.

It seems to me that there is no room for controversy except as to the single proposition advanced by appellants, that the waiver was, in legal effect, the waiver of Otis only. It is con-

tended that because the waiver was expressed in the singular number it is the contract only of the one who first wrote his name thereunder and that subsequent signatures were mere blank indorsements. Appellants rely upon *Central Bank v. Davis*, 19 Pick. 273. The indorsement on the back of the note in that case was as follows:

"Waiving right to notice.

"MOSES ROBERTS.
"JOSEPH DAVIS."

It was held that the waiver was that of Roberts alone and that the signature of Davis was a blank indorsement. This case has been frequently referred to by authors and courts as correctly stating the rule of law on the subject. But to understand the rule intended to be there laid down, some regard must be paid to the facts of that case. The note in question was a renewal note, the first note and its renewal being the note of one Baker payable to one Moses Roberts or order. Defendant Davis had received the money on the first note, and plaintiff agreed to renew it for Baker if he would get the name of defendant Davis. This was done, and the first note was delivered to Baker, who absconded insolvent, and hence the suit against Davis. He averred in his answer that the indorsement of the name of Roberts, the payee, was a forgery, which plaintiffs denied, but the court held that each party was left to the legal presumption in his favor on that point. The court said: "In the decision of the case we must act upon the assumption that the first indorsement is valid, as it is implied by law to be genuine, and no proof is admissible to show the contrary." The court held that defendant was estopped from denying the genuineness of the signatures of the antecedent parties because plaintiffs derived their title through him; and plaintiffs could not show the forgery and have their remedy for the consideration paid because their title came by Roberts' indorsement and they did not buy the note from defendant nor did they pay the consideration to him. Such is not the situation here. The stamped form of waiver was placed upon the back of the note before any person indorsed it and was not placed there by any of the indorsers; the note was given to Otis to be signed by the indorsers thus stamped, and the court found

that each of them placed his signature under the waiver just as it left the plaintiff's hands. That the waiver reads in the singular number cannot, under the circumstances of this case, compel the enforcement of the rule on which appellants rely. If it was the promise of all who signed, it is presumed to be joint and several. (Civ. Code, sec. 1660.) Mr. Daniels says: "The words or acts constituting a waiver must, of course, be those of the person entitled to require that the regular steps of demand, protest, and notice shall be taken; for it would be a solecism to permit one person to waive away the rights of another. Therefore, if one indorser write a waiver over his name, it does not affect another." (Citing *Central Bank v. Davis, supra;* 2 Daniel on Negotiable Instruments, 4th ed., sec. 1109.) Mr. Tiedeman in his work on Commercial Paper, at section 363, says: "If the waiver is made by one of the indorsers in writing, over his signature, it constitutes simply the personal waiver of that indorser, and is not binding upon the other indorsers, who do not become a party to the waiver," also citing the Massachusetts case, as also does Mr. Morse in his treatise on Banks and Banking, third edition, volume 1, page 26. We must assume, however, that these authors in deducing the rule, on the authority in part of the case cited, did so in view of the all-important fact that the waiver was indorsed on the back of the note by the payee's own hand and signed by him; and, proof to the contrary being inadmissible, the waiver necessarily became the several act of Roberts, and Davis' indorsement was in blank, over which the holder had no right to insert a contract of waiver. But in the case here the waiver was not so placed; it was stamped plainly in colored ink, and the first indorser in the order of the signatures was not the payee, nor did he place the waiver there; he was an accommodation indorser like the rest of them, and signed as they did for the benefit of the mining company of which he and they were stockholders. The plaintiff had a right to assume, on the return of the note thus signed, that each and every of the indorsers was severally bound by the waiver. This view of the matter might be strengthened by reference to the distinction made when the waiver is printed on the back of the note, and not written by the payee or by the first indorser.

Mr. Randolph speaks of a printed waiver on the back of a note as part of the note itself (Randolph on Commercial Paper, sec. 106); and Mr. Daniel says that "the purport of the instrument is not only to be collected from the four corners, but from the eight corners; the memorandum on the back affecting its operation being regarded the same as written on its face."

This rule is thus stated in 4 American and English Encyclopedia of Law, second edition, page 456: "If the indorsement containing the waiver is placed on the instrument at the time of execution or before indorsement, it must be regarded as part of the original instrument as much as if it had been written on the face thereof, and the rule as stated in regard to the parties affected by a waiver embodied in the instrument will apply," and in a footnote it is said: "Finding this printed formula on the back of the note, and placing their signatures with reference to it, the indorsers must be presumed to have seen and read the words, and to have adopted them as their contract."

2. It is claimed that the item of forty-five dollars and fifty-five cents costs was improperly allowed because no indemnity bond was tendered before the suit was begun. (Citing *Randolph v. Harris,* 28 Cal. 562.[7]) The complaint alleged "that plaintiff has tendered herewith and has duly filed with the clerk of this court a full and sufficient bond," etc. The court found the fact substantially as alleged in the complaint, and the evidence supports the finding. The only question is whether the filing the bond with the clerk of the court contemporaneously with the filing of the complaint, of which fact the service of the complaint gave defendants notice, was sufficient.

In *Randolph v. Harris, supra,* plaintiff offered in his complaint to indemnify defendant, and before the trial filed a bond with the clerk and at the trial tendered the same to defendant, who refused to accept it because insufficiently stamped and because it had not been tendered before suit. The objection as to the stamps was cured on the spot, which left only the other objection, there being no objection to the form of

[7] 87 Am. Dec. 139.

the bond or its sufficiency as security. The court, by Sanderson, J., said: "The proper course to pursue in such cases is for the plaintiff to prepare and tender before suit a reasonable indemnity. If it be refused he can then sue, alleging the tender and refusal, and keep the tender good by filing the bond in court. If, at the trial, the court shall be of the opinion that the indemnity is reasonable and sufficient, he will be entitled to judgment with costs. But he may sue and offer in his complaint to give such indemnity as the court may adjudge reasonable, and upon complying with the order in that respect take his judgment, but without costs." This course was recommended on the authority of certain English cases cited in the opinion, and on the assumption that the case was to be treated as one of equitable cognizance because a suit at common law cannot be maintained in such a case but resort must be had to a court of chancery, which always decrees indemnity against all future claims upon the maker or acceptor of the promissory note. The court further said: "In this case, as before stated, there is no averment of a previous tender, and, but for the fact that such tender seems to have been waived by the defendant, we should be compelled to reverse the judgment so far as the allowance of costs is concerned. We think, however, that the allowance of costs was correct in view of that fact."

I do not find that the point has been before this court since *Randolph v. Harris, supra,* and no later case is cited. The waiver referred to in the opinion arose from testimony given by the plaintiff that "he offered an indemnity bond before the suit was commenced, and that the defendant made some remark that amounted to a waiver of such bond." The waiver, therefore, did not spring from the fact that the defendant defended against the action. The opinion of Judge Sanderson certainly holds that although the question of costs is left in such cases to the discretion of the court, it would nevertheless be error to allow costs to the plaintiff unless he had previously to the suit tendered indemnity or indemnity had been previously waived. It will be observed, however, that the decision went off on the fact of waiver, and while the proper course to pursue in these cases is as suggested in the opinion, it was

not necessary to the decision to hold that costs should not be allowed unless there had been a previous tender of indemnity. The purpose of the bond is to protect the defendant against a possible action by some innocent holder of the lost paper, should it afterward be sued upon. The bond is the equivalent for the surrender and cancellation of the paper at the trial to which the defendant is entitled. Except as to the question of costs it does not concern the defendant whether the bond be furnished at the trial or before suit commenced. In the latter case he would have an opportunity to discharge the debt and save all costs; in the former he would have an opportunity to avoid future costs by tendering payment and would be entitled to costs accrued up to that time. I cannot see how any injury is visited upon the defendant in the one case more than in the other, except as to costs accrued when the tender is made. The filing of the bond at the time the complaint is filed and averment of the fact in the complaint, of which defendant has notice as soon as he is served, it seems to me should be regarded as a tender of indemnity at that time, and if the defendant then offers to pay or let judgment be taken against him he should be relieved from all costs then accrued. But if he persists in making a defense to the action he should be held for costs thereafter accruing. It seems to me that this view of the matter is clearly within the spirit of section 475 of the Code of Civil Procedure, which directs the court "to disregard any error . . . . in the pleadings or proceedings which, in the opinion of the court, does not affect the substantial rights of the parties." In the case here the record does not show what costs had accrued at the time the bond was filed or when it was tendered. We have no means of ascertaining what, if any, costs should be deducted as having accrued when the bond was tendered.

We advise that the judgment be affirmed.

Cooper, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.        Van Dyke, J., Harrison, J., Garoutte, J.