[Sac. No. 2722. In Bank.—April 25, 1919.]

E. W. HURLBUT, Respondent, v. J. R. QUIGLEY, Appellant.

[1] NEGOTIABLE INSTRUMENTS — INDORSEMENT — NATURE OF.—An indorsement of a negotiable instrument is a written contract of which the law declares the effect, and when counted upon, it is the foundation of the action.

[2] ID.—INDORSEMENT OF PROMISSORY NOTE — WAIVER OF PRESENTMENT, DEMAND, AND NOTICE OF PROTEST—PART OF CONTRACT WITH ENLARGED LIABILITY.—The signing by the three indorsers of a

promissory note of an agreement on the back of the note waiving presentment, demand, and notice of protest of the note constitutes a part of the written contract of indorsement with an enlarged liability.

[3] Id.—Liability of Indorser.—The contract of an indorser, except so far as he qualifies it in writing, is that if the instrument is dishonored, he will, upon compliance by the holder with certain conditions, pay the amount of the note, and therefore constitutes a conditional promise to pay.

[4] Id.—Accommodation Indorsers of Note — Waiver of Presentment, Demand, and Notice—Joint Indorsement—Contribution.— The words, "for value received I hereby waive presentment, demand, and notice of protest on the within note," written above the names of three accommodation indorsers of the promissory note of a corporation, the indorsements having all been made before the delivery of the note, makes the indorsements joint and not successive indorsements, and an indorser who pays more than his one-third share has the right to sue the others for contribution.

[5] Id.—Successive Indorsers—Presumption—Parol Proof—Joint Indorsers.—The presumption that where names appear as accommodation indorsers in successive order on the back of a note they are successive indorsers and not joint indorsers may be overcome by parol evidence of an intention to act jointly in the matter.

[6] Id.—Accrual of Action for Contribution.—The cause of action for contribution does not accrue at the time of execution of the contract by which persons become joint sureties, but only when one surety pays more than his share of the debt.

[7] Id.—Nature of Action for Contribution.—The action for contribution is not an action on the contract of indorsement, but is an action to enforce the equitable right of contribution upon the implied contract of each to the other, that they will share the burden equally.

[8] Id.—Consideration for Indorsement of Note—Original Debt.— Where the indorsement is made before the delivery of the note, the original debt is a sufficient consideration for the contract of indorsement.

[9] Id.—Indebtedness Evidenced by Note—Giving of New Note— When not Payment.—A debt evidenced by a promissory note is not paid by the giving of a new note covering the indebtedness and other indebtedness subsequently accrued, where the new note was neither offered nor accepted as a satisfaction of the original debt, but merely as additional evidence thereof.

[10] Id.—Action for Contribution—Pleading—Joint Indorsement— Sufficiency of Complaint.—In an action by an accommodation indorser of a note against another indorser for contribution, the

complaint sufficiently alleges a joint indorsement where it sets forth the note and the contract of indorsement in full, and alleges that the note and the indorsements were executed and delivered at the same time and as one transaction.

[11] PLEADING—STATEMENT OF FACTS.—A pleading is sufficient if it states the facts upon which the law takes effect; the conclusion of law need not be stated.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge. Affirmed.

The facts are stated in the opinion of the court.

L. L. Dennett and J. C. Needham for Appellant.

Hawkins & Hawkins for Respondent.

SHAW, J.—The plaintiff, the defendant, and William Trebilcock became accommodation indorsers upon a promissory note for six thousand dollars, payable to the First National Bank of Central City. The plaintiff was, by suit, compelled to pay the whole thereof. He thereupon brought the present action to recover from Quigley one-third of the amount he had thus been compelled to pay and recovered judgment in the court below. From this judgment the defendant appeals.

The complaint alleged that the Gilpin Lumber Company executed a note to the First National Bank of Central City, bearing date July 10, 1911, for six thousand dollars, and "that at the same time and as a part of the same transaction and for value received, the plaintiff, E. W. Hurlbut, and the defendant, J. R. Quigley, and one Wm. Trebilcock signed the following agreement on the back of the said note and indorsed the same as follows, to wit:

"For value received I hereby waive presentment, demand and notice of protest on the within note.

"E. W. HURLBUT.
"WM. TREBILCOCK.
"J. R. QUIGLEY."

The theory of the complaint is that Hurlbut, Trebilcock, and Quigley were joint indorsers of the note, and that therefore one who paid more than his one-third share thereof had

the right to sue the others for contribution. It is claimed that the evidence does not show a joint indorsement.

The theory of the appellant is that the note, with the writing and the names of Hurlbut and Trebilcock indorsed thereon, was delivered to the bank and that thereafter Quigley wrote his name under the names of the other two indorsers. On this assumption the argument is that with respect to the two other persons, Quigley is a successive indorser and not a joint indorser with them, and, consequently, that he and Hurlbut are not joint sureties and that Hurlbut has no right of contribution from him. We find that the evidence warrants a different conclusion, and one which will support the judgment given for the plaintiff.

There was evidence to the effect that Quigley, Hurlbut, and Trebilcock were stockholders and officers of the Gilpin Lumber Company at and for years prior to the time of the execution of the note of July, 1911; that the company's place of business was in Colorado; that it borrowed large sums of money upon its notes from time to time from banks upon an arrangement, which was carried out, that Hurlbut, Trebilcock, and Quigley should indorse the same as sureties; that in July, 1911, the company owed the First National Bank of Central City, Colorado, six thousand dollars, of which three thousand dollars was evidenced by its note indorsed by Quigley and the other two under the arrangement stated, and the balance was in the form of an overdraft; that the company desired to give a new note for said debts and that the bank thereupon agreed to accept the company's note for six thousand dollars indorsed by Hurlbut, Trebilcock, and Quigley, as sureties, in satisfaction of such note and overdraft. Quigley at that time lived in California, but was still a stockholder and officer of the company. Thereupon the note was drawn and properly signed by the officers of the lumber company, indorsed by Hurlbut and Trebilcock, and handed to an officer of the bank to be forwarded to Quigley, in California, for his signature as indorser. The note was so forwarded and was returned by Quigley to the bank in September, 1911, about two months after its date, with signatures as above shown. The bank then accepted the note as the obligation of the parties thereto and canceled the previous note for three thousand dollars. There is no evidence tending to show any understanding between the three indorsers that they were to be liable successively in

the order in which their names appeared upon the note, or that their relation was to be other than that of simultaneous accommodation indorsers. As stockholders they were all interested in the credit of the corporation.

[1] "An indorsement is a written contract of which the law declares the effect; and when counted upon it is the foundation of the action." (*Haines* v. *Tharp,* 15 Ohio, 133; *Goldman* v. *Davis,* 23 Cal. 256; *Citizens' Bank* v. *Jones,* 121 Cal. 32, [53 Pac. 354].) [2] Where an indorser precedes his signature by a statement such as that in the indorsement above shown, it constitutes "a valid indorsement with an enlarged liability," such enlargement in the present case being a waiver of some of the conditions imposed by law upon the payee in favor of the indorser. (*Buck* v. *Davenport Savings Bank,* 29 Neb. 407, [26 Am. St. Rep. 392, 45 N. W. 776]; *Helmer* v. *Commercial Bank,* 28 Neb. 474, [44 N. W. 482]; *Heard* v. *Dubuque etc. Bank,* 8 Neb. 10, [30 Am. Rep. 811].) The writing above the indorsers' names, therefore, constituted a part of the written contract of indorsement. [3] The contract of an indorser, except so far as he qualifies it in writing, is that if the instrument is dishonored he will, upon compliance by the holder with certain conditions, pay the amount of the note. (Civ. Code, sec. 3116.) It constitutes, therefore, a conditional promise to pay the note. "A promise, made in the singular number, but executed by several persons, is presumed to be joint and several." (Civ. Code, sec. 1660. See, also, *Farmers' Exch. Bank* v. *Altura etc. Co.,* 129 Cal. 269, [61 Pac. 1077]; 1 Daniel on Negotiable Instruments, sec. 94; *Maiden* v. *Webster,* 30 Ind. 317; *Salomon* v. *Hopkins,* 61 Conn. 47, [23 Atl. 716]; *Monson* v. *Drakeley,* 40 Conn. 559, [16 Am. Rep. 74]; *Hemmenway* v. *Stone,* 7 Mass. 58, [5 Am. Dec. 27].) "Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." (Civ. Code, sec. 1659.)

[4] It follows, therefore, that the circumstances above related rebut any presumption that the indorsers did not intend to become jointly bound and, further, in view of the above authorities, that the agreement written on the back of the note, being joint and several in its effect, and a part of the contract of indorsement, made the entire contract joint and several in character.

The case, with respect to the liability of the several indorsers and their relation to each other, is almost identical with *Farmers' Exch. Bank* v. *Altura etc. Co., supra.* In that case Hutson executed a note to the Altura ,Company and thereupon it was taken by Otis, president of the company, to the plaintiff bank, duly indorsed by the company, to be discounted for the benefit of the company. The bank required security, and the words, ''I hereby waive demand and notice of demand, protest and notice of protest, and nonpayment,'' were stamped upon the back of the note. Otis then took the note in this condition to procure accommodation indorsers. He then procured underneath the words above quoted, the names of five persons, written one under the other and on different days. The note was then delivered to the bank and by it discounted for the company. The court below found that all of the persons thus indorsing the note had waived protest, notice of protest, and nonpayment of the note. The court held that this finding was sustained by the facts above stated. Referring to cases where it was held that such an indorsement constitutes a waiver only by the first person whose signature appears thereunder, there being nothing to indicate the intention to sign jointly, the court said that under the circumstances shown, this rule did not prevail. That the first indorser ''was an accommodation indorser like the rest of them, and signed as they did for the benefit of the mining company of which he and they were stockholders,'' and in effect that as they all signed before the note was delivered, they were all alike bound by the waiver of notice, etc., appearing above their signatures.

Upon the evidence in this case the court below properly found that there was no delivery of the note until after it had been received by the bank from Quigley after he had indorsed the same in company with the other indorsers, and that he thereby became a joint and several indorser with the others. This being the case, the right of contribution would exist in favor of any of the joint indorsers who paid more than his share of the debt. The judgment, so far as this point is concerned, is supported by sufficient evidence.

The appellant attempts to invoke the rule which has been laid down in some cases, that where names appear as accommodation indorsers in successive order on the back of a note, they are, in the absence of evidence to the contrary, presumed

to be successive indorsers and not joint indorsers. **[5]** It is well settled, however, as the above cases indicate, that circumstances showing an intention to act jointly in the matter may be proven by parol evidence, and the presumption of successive indorsements overcome. (8 Cor. Jur. 381; *Enterprise B. Co.* v. *Canning,* 210 Mass. 285, [96 N. E. 673]; *Shea* v. *Vahey,* 215 Mass. 82, [102 N. E. 119].)

The action is not barred by the statute of limitations. **[6]** The cause of action for contribution does not accrue at the time of execution of the contract by which persons become joint sureties, but only when one surety pays more than his share of the debt. Hurlbut was compelled to pay this debt on January 26, 1916, and the action was begun on May 17, 1916. The period of limitation is two years. **[7]** The action for contribution is not an action on the contract of indorsement, but is an action to enforce the equitable right of contribution upon the implied contract of each to the other that they will share the burden equally. (*Chipman* v. *Morrill,* 20 Cal. 136; *Sherwood* v. *Dunbar,* 6 Cal. 53; *Richter* v. *Henningsan,* 110 Cal. 530, 537, [42 Pac. 1077]; *Bunker* v. *Osborn,* 132 Cal. 483, [64 Pac. 853].)

There was a sufficient consideration for Quigley's indorsement. **[8]** His indorsement and that of the others were all made before delivery of the note, consequently the original debt was a sufficient consideration for the contract of indorsement. (*Savage* v. *Fox,* 60 N. H. 17; 8 Cor. Jur. 211, sec. 343; *McDonald* v. *Randall,* 139 Cal. 255, [72 Pac. 997]; *Rohrbacher* v. *Aitken,* 145 Cal. 485, 490, [78 Pac. 1054].)

**[9]** There is no merit in the claim that the original debt was paid by the Gilpin Lumber Company after the execution of the note in controversy. It is true that a new note was afterward given by the company to cover the same indebtedness with other indebtedness subsequently accrued, but this new note was neither offered nor accepted by the bank as a satisfaction of the note in question here, but merely as an additional evidence of the original debt. Such a transaction is not a payment.

Upon the decision of this case in Department it was stated that the complaint did not sufficiently allege a joint indorsement and, consequently, that the judgment could not be sustained. This objection is not mentioned in the briefs. **[10]** Nevertheless, we have given it further consideration and we

are satisfied that the complaint is sufficient on this point. We have already shown that the contract of indorsement is a written contract of which the law declares the effect. In this state the law on the subject is declared in section 3116 of the Civil Code. It is presumed, in the absence of evidence to the contrary, that the law is the same in Colorado. That section recognizes that such contract may be qualified. We have also shown that the qualification written on the note here involved and signed by the indorsers made the entire contract of indorsement joint and several in character as between the parties thereto. The complaint sets forth the note with this contract indorsed thereon, in full. It therefore charges that the contract of indorsement is joint and several. Furthermore, it alleges that the Gilpin Lumber Company "executed and delivered" the six thousand dollar note and that "at the same time and as a part of the same transaction" the three indorsers "signed" the agreement so written on the back of the note and indorsed the same. This means that the indorsements were simultaneously delivered. It is the final delivery as a complete contract that constitutes execution. Therefore it alleges that the indorsed agreement was executed simultaneously by all the indorsers. The allegation that they all signed the agreement is an allegation that Quigley signed it. He would be bound by it as matter of law. **[11]** A pleading is sufficient if it states the facts upon which the law takes effect. The conclusion of law need not be stated. As it appears from the pleading that the contract of indorsement was joint and several, and that Quigley and the others simultaneously executed it, the conclusion must be that it charges a joint indorsement by Quigley and the others.

The judgment is affirmed.

Olney, J., Lennon, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.

WILBUR, J., Dissenting.—I dissent. In view of the fact that the prevailing opinion holds that the complaint is sufficient, while the contrary opinion prevailed in Department, it seems proper to express in a dissent the view taken in Department, to which I still adhere.

In *Navajo County Bank* v. *Dolson,* 163 Cal. 485, [41 L. R. A. (N. S.) 787, 126 Pac. 153], the court in Bank, speak-

ing through Chief Justice Angellotti, where a note had been indorsed by three persons (the defendants) before its delivery, as an accommodation to the payer, said: "It cannot be doubted that if the note was a negotiable instrument, the defendants were mere indorsers with no other liability than that of indorsers. As such, notice of dishonor or nonpayment would be essential to their liability in the absence of waiver on their part to right of such notice." The main opinion holds that the words, "For value received I hereby waive presentment, demand and notice of protest on the within note," converts the indorsements which would otherwise be construed as successive indorsements into joint indorsements. This view, it seems to me, does not give sufficient weight to the effect of an indorsement as provided by the law. It is conceded that without the waiver clause the effect of the indorsement of Hurlbut, as between Hurlbut and Quigley, was that Hurlbut, the first indorser, agreed to reimburse Quigley, the last indorser, upon proper presentment, demand, and notice, in the event that Quigley was called upon to pay the note, and the effect of Quigley's indorsement was that Quigley would pay the note to the payee, in the event that the payer failed to do so, upon proper presentment, demand, and notice, with recourse, in case of such payment for reimbursement against Hurlbut. This rule is thus stated in Daniel on Negotiable Instruments, section 704: "But in the absence of any agreement among accommodation indorsers, the law fixes their liability in accordance with the order of the names on the paper, and the indorser who pays a bill or note has recourse against a prior indorser for reimbursement." The same rule concerning indorsers is stated in a note in 28 L. R. A. (N. S.) 1039: "Their liability *inter se,* in the absence of an express agreement to the contrary, is that expressed by the paper itself, and their liability is successive and not joint; consequently they are not cosureties and the doctrine of contribution does not obtain. . . . The only question, in the absence of an agreement to the contrary, is what is the *prima facie* liability of the parties as shown by the paper itself." The rule may perhaps best be stated in the language of section 3116 of the Civil Code, in force at the time of the transaction: ". . . Every indorser of a negotiable instrument, unless his indorsement is qualified, *warrants to every subsequent holder* thereof, who is not liable thereon to

him . . . that if the instrument is dishonored, the indorser will, upon notice thereof duly given to him, or without notice, *where it is excused by law, pay the same with interest. . . . "* Now, where notice is waived the giving of notice is "excused by law," and do not we have here a situation expressly provided for by section 3116, namely, that the first indorser warrants to the last indorser that he will, without notice, pay the same with interest? If we hold, as I agree may properly be done, that the waiver clause applies to all the subsequent indorsements (although there are authorities in other states to the contrary, Daniel on Negotiable Instruments, sec. 1092a, 6th ed., p. 1247), it seems to me that we give full effect to such clause by holding that this waiver is a joint and several agreement of waiver, the legal effect of which is to remove from the indorsement the condition implied by law that the obligation to pay shall be conditioned upon proper presentment, demand, and notice, so that Hurlbut's agreement to pay the payer of the note in the case of the default of the payee, or to reimburse Quigley in the event that Quigley is called upon to pay the same, is no longer conditioned upon presentment, demand, and notice, but absolute without such presentment, demand, and notice, while Quigley's agreement to pay the payee of the note with recourse on Hurlbut for reimbursement also becomes absolute, instead of conditional upon such presentment, demand, and notice. To hold that because the indorsers join in the one agreement to waive notice, etc., they thereby completely change the contract implied by law, so that instead of Hurlbut's agreement to pay Quigley we have an implied agreement that Quigley will pay to Hurlbut, seems to me to give an effect to such waiver wholly foreign to its language and evident purpose. The main opinion states that the effect of the waiver and indorsement simply constitutes a *contract of indorsement* with enlarged liability, while the effect of the decision is that where several indorsers join in such waiver, their contract becomes one of guaranty, or suretyship; a joint obligation to pay the payee in the event of the payer's default, with the obligation to mutually contribute in the event anyone is called to pay more than his proportion to the payee. The rules of the law-merchant, previously in effect, governing such cases have been incorporated into our Civil Code, in the uniform negotiable instrument law, since the case was tried, and may well be stated in the

language of section 3148 of the Civil Code, as amended in 1917, [Stats. 1917, p. 1543], providing as follows: "Where a person places his indorsement on an instrument negotiable by delivery he incurs all the liabilities of an indorser." Section 3149 of the Civil Code: "As respects one another indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsers who indorse are deemed to .indorse jointly and severally." Section 3145 of the Civil Code provides as follows: "Where a person, not otherwise a party to an instrument, *places thereon his signature in blank before delivery* he is liable as indorser, in accordance with the following rules: (1) *If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties.* (2) If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer. (3) If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee." It seems to me, therefore, that the fact that the indorsers joined together in the waiver does not affect that part of the contract relating to their obligation to pay one another and to pay the payee. I do not believe that the mere waiver of notice can convert an agreement which the law expressly provides shall be that of indorser into a mere contract of guaranty.