W. H. MOOERS, Appellee, v. LILLIE G. STALKER et al., Appellants.

BILLS AND NOTES: Holders in Due Course—Jury Question. A jury question as to the good-faith holdership of the indorsee of a negotiable promissory note is made by testimony, *inter alia*, tending to show: (1) That the note was fraud-induced; (2) that the indorsee did not know whether the original payee was a corporation or a partnership, or what its financial condition was, and made no inquiries; and (3) that the indorsee did know that the note was given for stock in the original payee concern.

BILLS AND NOTES: Liabilities on Indorsement—Printed Guaranty and Waiver Clauses. A writing which is printed on the back of a negotiable promissory note, and across one end thereof, in the following words,—''For value received the undersigned hereby guar-

antees the prompt payment of this note at maturity or at any time thereafter, waiving demand, protest, and notice of protest,''—is not applicable to and is no part of the contract of the *last* of several successive title-passing indorsers.

EVANS and PRESTON, JJ., dissent.

*Appeal from Union District Court.*—P. C. WINTER, Judge.

DECEMBER 15, 1922.

SUIT on promissory note, against the maker and an indorser. The court directed a verdict for the plaintiff against both defendants, and they appeal.—*Reversed.*

*Higbee & McEniry* and *R. Brown,* for appellants.

*James R. Locke* and *L. J. Camp,* for appellee.

FAVILLE, J.—On November 25, 1918, the appellant Lillie G. Stalker executed and delivered to the Atlas Motor Truck Company her certain promissory note in the sum of $3,000. The note purports to have been indorsed by the Atlas Motor Truck Company to one O. N. Frazier, who in turn indorsed the same to the appellant P. H. Pottinger, who sold and indorsed the same to the appellee. Suit was brought on the note against the maker, Stalker, and the indorser Pottinger. Appellee claims to be an innocent purchaser in due course. The appellant Stalker, by her answer, claims that the note was obtained from her as evidence of an indebtedness incurred for the purchase of certain stock in the Atlas Motor Truck Company, and pleads that the said note was obtained by fraud and false representations. The appellant Pottinger filed a separate answer, pleading that he was a mere indorser for the purpose of the transfer of title to said note, and that he had received no notice of the nonpayment of the note.

I.     Upon the trial of the cause, the appellant Stalker introduced evidence tending to show that the note was given for a subscription to stock in the Atlas Motor Truck Company; that

**1. BILLS AND NOTES: holders in due course: jury question.** the said subscription for stock and the execution of said note were procured by representations made to her by one O. N. Frazier and by others interested in the said Atlas Motor Truck Company that the property of the company was worth $100,000, consisting of machinery to make trucks, and that a patent held by said company was worth over $100,000; that representations were also made that the stock would pay a 10 per cent dividend; and that the stock would be resold for said appellant at a profit. There was evidence tending to show that the Atlas Motor Truck Company owned no property of any value except one truck. Its chief business appears to have been the sale of its own stock.

The evidence was sufficient to go to the jury on the question of the procurement of said note from the appellant Stalker by fraud and false representations.

The appellee testified that he paid $2,880 for the note. He also testified that he made investigation of a banker, when the note was offered to him, as to whether the maker was good; that he did not know whether the Atlas Motor Truck Company was a partnership or a corporation; that he took the note at its face, and thought that it was good; that he made no inquiry about the Atlas Motor Truck Company, did not consider it at all, did not know what kind of company it was or where it was doing business, and did not care; that he regarded the note as good, and did not think about anything else.

It appeared in the evidence that Pottinger obtained the note by trading an automobile for it, to Frazier, the stock salesman for the truck company; that Pottinger had sold other notes to the appellee, and offered him this note for purchase; that, at the time of the sale of the note, he informed the appellee that he had gotten the note from Frazier; that appellee knew Frazier; that Frazier and Pottinger had sold appellee a car, and that Frazier, before this time, had had a talk with appellee about selling him stock in the truck company; that Frazier tried to make appellee think that the Atlas stock would make him richer than he was; that appellee knew that the truck company intended to make trucks, and had seen the one truck owned by it. There is also evidence tending to show that appellee knew, before he purchased the note, that it was given to Frazier for stock

in the truck company. It appears that appellee lived in Creston at the time, and was a retired farmer, and took a local paper, and was generally informed about things in the city- of Creston; that, when he bought the note, the indorsement of the truck company and that of Frazier was on it, as it appears now. The evidence shows that Frazier has disappeared.

We have not attempted to set out all of the evidence in the case on the question of fraud in the procurement of the note or notice to appellee. By Section 3060-a59 of the Code Supplement of 1913, under the evidence offered the burden was on the appellee, as holder of the note, to prove that- he or some person under whom he claims he acquired the title was a holder in due course. We have recently had occasion to review the authorities and pass upon this question in *Connelly v. Greenfield Sav. Bank*, 192 Iowa 876, and in *Farmers Nat. Bank of Kingsley v. Pratt*, 193 Iowa 406.

The appellee expressly waives any brief and argument in this court on the issues between the appellant Stalker and the appellee.

While the case is somewhat close, we are inclined to think, following the rule heretofore announced by us, that the evidence in the case was sufficient to take to the jury the question of whether or not the appellee was a bona-fide holder in good faith, and that the court erred in directing a verdict in behalf of the appellee, as against the appellant Stalker.

II.  The note in question is as follows:

"$3,000.00                    Creston, Iowa, Nov. 25, 1918.

"Two years after date, for value received, we, each as principal, jointly and severally, promise to pay to the order of Atlas Motor Truck Co.

payable at ..........................................

FARMERS & MERCHANTS SAVINGS BANK, CRESTON, IOWA

Three Thousand ................................Dollars,

with interest at 6 per cent per annum from date ...... interest

2. BILLS AND NOTES: liability on indorsement: printed guaranty and waiver clauses.

semiannually, and attorney's fees if suit be commenced on this note. This note shall draw interest at eight per cent per annum after default or after maturity and all past due interest shall

draw interest at eight per cent, and if interest becomes delinquent the principal and interest become due and payable at once.

"Mrs. Lillie G. Stalker.

"P. O. Creston, Iowa."

Across the back of said note at one end appears in print the following:

"For value received the undersigned hereby guarantees the prompt payment of this note at maturity or at any time thereafter, waiving demand, protest and notice of protest."

And beneath said printed statement is a space, and under the space a printed, dotted line, extending the width of the note. Below this dotted line there are written, in ink, the following indorsements, both of which appear to be in the same handwriting, presumably that of Frazier:

"Pay to the order of O. N. Frazier, by Atlas Motor Truck Co. O. N. Frazier, Treasurer."

"Pay to the order of P. H. Pottinger, Creston, Ia. O. N. Frazier."

Beneath these indorsements appears the indorsement in question, as follows:

"Pay to the order of W. H. Mooers, Creston, Ia. P. H. Pottinger."

The question at this point in the case is whether or not the appellant Pottinger, as such indorser on the note, is bound by the printed provision on the back of said note, and became thereby, in effect, a guarantor of said note, and waived demand, protest, and notice of protest.

It is conceded on all hands that no demand or protest or notice of protest was ever had upon the appellant Pottinger. If the obligation of appellant Pottinger is only that of an ordinary indorser of the paper, then he is not liable thereon without notice of dishonor. Code Supplement, 1913, Section 3060-a89. No question is raised in the instant case but that the words "waiving demand, protest, and notice of protest" are sufficiently inclusive to be a waiver of notice of dishonor. So the sole question at this point is whether or not appellant Pottinger waived notice of dishonor by the indorsement he made upon the written instrument.

The law as it was generally recognized before the adoption of the Negotiable Instrument Act is stated in 4 Am. & Eng. Encyc. of Law (2d Ed.), 456, as follows:

"If the indorsement containing the waiver is placed on the instrument at the time of execution or before indorsement, it must be regarded as part of the original instrument, as much as if it had been written on the face thereof, and the rule as stated above in regard to the parties affected by a waiver embodied in the instrument will apply."

2 Randolph on Commercial Paper (2d Ed.), Section 1357, refers to a printed waiver on the back of a note as a part of the note itself.

Aside from the provisions of the Negotiable Instrument Statute, the general rule is that, when a waiver is written or printed above the names of several indorsers, the waiver is presumed to be the contract of all of them. *Farmers' Bank v. Ewing,* 78 Ky. 264, 266; *Parshley v. Heath,* 69 Me. 90; *Johnson v. Parker,* 86 Mo. App. 660; *Loveday v. Anderson,* 18 Wash. 322.

Prior to the enactment of the Negotiable Instrument Act, we have held that a provision written on the back of a note at the time of its execution became a part of it. *Heaton v. Ainley,* 108 Iowa 112; *Elmore v. Higgins,* 20 Iowa 250; *Bonewell v. Jacobson,* 130 Iowa 170; *Allison v. Hollembeak,* 138 Iowa 479; *Oskaloosa College v. Hickok,* 46 Iowa 237.

Does the Negotiable Instrument Act work any change in the general rule with regard to the liability of an indorser? Section 3060-a110, Code Supplement, 1913, is as follows:

"Where the waiver is embodied in the instrument itself, it is binding upon all parties; but where it is written above the signature of an indorser, it binds him only."

There is no difficulty in regard to the first clause of this section of the statute. It is clear and specific:

"Where the waiver is embodied in the instrument itself, it is binding upon all parties."

This was but declaratory of what had previously been recognized by us to be the law. *Phillips v. Dippo,* 93 Iowa 35; *Farmers Sav. Bank v. Wilka,* 102 Iowa 315.

But the clause in question was not written or printed in

the instrument itself. It therefore does not come under the first clause of the quoted section. What effect is to be given to the second clause of the section, "But where it [the waiver] is written above the signature of an indorser, it binds him only?"

The Negotiable Instrument Law evidently was intended to change the rule that had been recognized before its adoption, with respect to provisions not embodied in the instrument. It makes a distinction between a waiver embodied in the instrument itself and a waiver upon the back thereof, above the signature of an indorser. It was obviously intended by this statute to get away from the rule that had previously been recognized, that a waiver written or printed upon the back of a note at the time of its execution had the same force and effect as though embodied in the instrument. It is therefore apparent, under the statute as it now stands, that an indorser is bound by a waiver that is embodied in the body of the instrument. It is also obvious that he is not bound in all events by a waiver that is not so embodied in the body of the instrument, but placed on the back thereof.

Who is bound by such a waiver? The statute says that, where it (the waiver) is written above the signature of an indorser, it binds him only. That is to say, an indorser who waives notice waives for himself alone, and a subsequent indorser does not, by the mere fact of indorsement, accept or become bound by the waiver of a previous indorser. Under the statute, he is not now required to cancel or reject such waiver or to add to his indorsement words repudiating the waiver of a prior indorser.

No other reasonable construction can be placed upon the language of this clause of the statute except that an indorser is not bound by a waiver on the back of a note unless in some manner he adopts the waiver as his own. The language of the waiver may be such as to obviously bind each and every indorser on the note, without having it specifically repeated above the signature of each indorser. This happens, for example, where a group of accommodation indorsers sign together under one waiver obviously intended to bind all. *Central Nat. Bank v. Sciotoville Mill. Co.*, 79 W. Va. 782 (91 S. E. 808); *Farmers Exch. Bank v. Altura Gold Mill & Min. Co.*, 129 Cal. 263 (61 Pac. 1077).

But we think the statute requires that no indorser is to be bound by a waiver not embodied in the instrument merely because the same has been made by some other previous indorser. The indorser must either make it or in some manner adopt it as his own, or he is not bound by it.

Applying these rules to the instant case, what do we find? There is nothing embodied in the instrument itself that constitutes any waiver of notice. The printed statement upon the back of the note provides for a guaranty of the note, and also includes the waiver in question. This was evidently designed and intended to be signed upon the dotted line below the printed portion, either by the payee or by an accommodation indorser as a guarantor. This, however, was not done in the instant case. The note was indorsed by the payee truck company to Frazier.

No question is raised as to the sufficiency of this indorsement to pass title, or to render the original payee an indorser of the paper; nor is any question before us as to whether or not such first indorser would be bound by the terms of the printed guaranty and waiver.

Frazier, in turn, indorsed the note by writing upon the back thereof the following:

"Pay to the order of P. H. Pottinger, Creston, Ia. O. N. Frazier."

Thereafter, Pottinger indorsed the same to appellee in the following words:

"Pay to the order of W. H. Mooers, Creston, Ia. P. H. Pottinger."

Did the printed waiver bind Pottinger as an indorser? Granting, for the sake of the argument (and it is unnecessary that we decide the question for the purposes of this case), that the first indorser, whose indorsement was written immediately below the printed waiver, adopted the same thereby, and is bound by the waiver, does it follow that each subsequent indorser who makes a full indorsement to pass title is also bound by the said waiver? Unless we do violence to the plain language of this statute, we are of the opinion that this question must be answered in the negative.

The evident purpose and intent of the statute was to change the former rule that has been recognized, by which all indorsers

were bound by a waiver by the first indorser, unless they rejected the same. The effect of the statute now is that no indorser is bound by the waiver of any. other indorser unless, by express words or otherwise, he adopts the same. Or, to put it another way, unless a waiver is embodied in the instrument itself, it is not binding upon any indorser except one who executes it in his own behalf, or adopts it.

If any indorser was bound by the printed waiver upon the back of this note, it was the payee, who was the first indorser thereon. Nothing in the language of the waiver indicates that it was intended to bind any subsequent indorser, and there is nothing to indicate that the appellant Pottinger, as an indorser, in any way adopted or became bound by the terms of the waiver. There was nothing in the indorsement made by the appellant Pottinger that differs from the ordinary indorsement to pass title, or that changed his liability from that of an indorser to a guarantor, which would necessarily be the effect if the printed clause on the back of the note was binding on him.

Construing this statute as we feel we must, and limiting its application to the facts in this case, we see no escape from the conclusion that appellant Pottinger was a mere indorser on the note in question, and entitled, as such, to notice of dishonor. Without such notice, he is not liable as an indorser on said paper.

It is our conclusion that the action of the lower court in directing the jury to return a judgment in favor of the appellee and against the appellant Pottinger was erroneous.

The cause must, therefore, be reversed as to both appellants. It is so ordered.—*Reversed.*

STEVENS, C. J., WEAVER, ARTHUR, and DE GRAFF, JJ., concur.

EVANS and PRESTON, JJ., dissent.

EVANS, J. (dissenting.) I am constrained to dissent from the majority view. I think that the printed waiver appearing upon the back of the note, and so appearing at the time the note was executed by its maker, was "embodied in the instrument," within the meaning of the Negotiable Instruments Act, Section 3060-a110. This section is as follows:

"Where the waiver is embodied in the instrument itself, it is binding upon all parties; but where it is written above the signature of an indorser, it binds him only."

The argument put forth by the majority is that this section of the act was intended to change the law as it was before the enactment thereof. This point is fundamental. The majority argument concedes, in effect, that, prior to the adoption of the Negotiable Instruments Act, the printed provisions appearing on the back of the note at the time of the execution thereof by the maker would become a part of the note, and were, therefore, "embodied" therein. My contention is that this act made no change in existing law at this point. The primary purpose of the Negotiable Instruments Act was to codify existing law, and not to initiate new or amendatory legislation. Its drafters codified the law in uniform terms for all the states of the Union. For the purpose of such codification, it purported to recognize and adopt the existing law as it was by universal authority or by the great weight thereof. There was no attempt to overturn or amend what had already been settled, except at those points where conflict of authority existed. There was no substantial conflict in the authorities at this point. A printed indorsement, such as we have here, placed upon the back of the note and being thereon at the time of the execution of the note by the maker, was deemed as much a part of the original instrument as if it had been written on the face thereof. That this was so is recognized by the majority, and the opinion frankly sets forth the rule as stated in 4 Am. & Eng. Encyc. of Law (2d Ed.) 456, as follows:

"If the indorsement containing the waiver is placed on the instrument at the time of execution or before indorsement, it must be regarded as part of the original instrument, as much as if it had been written on the face thereof, and the rule as stated above in regard to the parties affected by a waiver embodied in the instrument will apply."

The foregoing means nothing unless it means that such an indorsement so placed is "embodied in the instrument." It has been so held repeatedly by this court. Our cases are frankly cited by the writer of the majority opinion, and I will not repeat them. My contention, therefore, is that the effect of the printed

indorsement of waiver involved in this case is completely covered by the first clause of Section 3060-a110, above quoted:

"Where the waiver is embodied in the instrument itself, it is binding upon all parties."

I call attention here to two sentences in the majority opinion, which purport to be in avoidance of the above statutory clause. I quote them:

"But the clause in question was not *written* or *printed* in the instrument itself. It therefore does not come under the first clause of the quoted section."

The implication of the first sentence here quoted is that it was essential that the clause in question should be *written* or *printed on the face* of the instrument, in order to come within the terms of the first clause of the section above quoted. This section does not require the clause to be written or printed in the instrument in such sense. It does require it to be "embodied" therein. Under all the authorities preceding the Negotiable Instruments Act, such clause was embodied therein by being printed upon the back thereof at the time of the execution by the maker.

If I am correct up to this point, it follows that the second clause of the section is not controlling or applicable. The fundamental distinction between the two clauses is that the first refers to the condition of the instrument as it was when it left the hands of the maker; the second refers to such indorsement or writing as had been made since the instrument left the hand of the maker, and made presumably at the time of the "signature of an indorser." Such was concededly the state of the law prior to the adoption of the Negotiable Instruments Act. So uniformly does the act itself appear to have been applied at this point that the books are almost void of the raising of any question or controversy such as that now presented to us. Only one case can be found where the question has been considered, and I must give credit to the writer of the majority opinion for finding and bringing to my attention that case. It is *Central Nat. Bank v. Sciotoville Mill. Co.*, 79 W. Va. 782. In that case, the holding on this question was adverse to that of the majority opinion herein, and was substantially what I contend for.

I would affirm the judgment below on this branch.

PRESTON, J., joins in this dissent.