[Civ. No. 11945. Second Appellate District, Division One.—June 22, 1940.]

PACIFIC FREIGHT LINES (a Corporation), Appellant, v. PIONEER EXPRESS COMPANY et al., Respondents.

[Civ. No. 11964. Second Appellate District, Division One.—June 22, 1940.]

PACIFIC FREIGHT LINES (a Corporation), Appellant, v. VALLEY MOTOR LINES, INC., et al., Respondents.

Wallace K. Downey for Appellant.

Courtney L. Moore for Respondents.

DORAN, J.—In the year 1930, the reduction of certain freight rates by the railroad commission engaged the attention of a number of motor truck carriers, including appellant, as a result of which an action was commenced by them before the railroad commission. A firm of attorneys employed to prosecute the action later brought suit for attorneys' fees and recovered judgment against eight of the interested, above mentioned motor truck carriers, including appellant. (See *Johnson* v. *California Interurban Motor Trans. Assn.*, 24 Cal. App. (2d) 322 [74 Pac. (2d) 1073].) Having discharged certain claims included in that judgment, appellant, plaintiff in the within action filed in Los Angeles County, seeks contribution from its former codefendants, respondents herein, who, it is contended, were held to be jointly and severally liable with appellant for the payment thereof. Defendant and respondent Pioneer Express Company moved for a change of venue to the city and county of San Francisco on the ground that San Francisco was its principal place of business. United Motor Transport Lines, Inc., moved for a change of venue to Sacramento County for similar reasons. The trial court granted both motions and from the orders duly entered pursuant thereto, plaintiff appeals.

It is contended by appellant that the obligations of respondents to contribute were to be performed in Los Angeles County and that Los Angeles County therefore is the proper place for the trial of said actions, which contention is based on section 16, article XII of the Constitution of California, which is as follows:

"A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or the liability arises or the breach occurs; or in the county where the principal place of business of such cor-

poration is situated, subject to the power of the court to change the place of trial as in other cases.''

Respondents, contending to the contrary, argue as follows, quoting from respondents' brief: ''That a corporation is entitled to have litigation tried in the county where its principal place of business is situated is too well established to be controverted. . . . Plaintiff sued the respondent corporations under a claim for contribution arising out of a judgment secured against the plaintiff which it subsequently had to pay. It claims that under the constitutional provision the obligation or liability arose in Los Angeles County.'' Referring to the facts in the Johnson case, *supra,* respondents continue: ''The appellants cannot question that the unauthorized contract by Mr. McLenegan'' (the president of a transportation association) ''with the attorneys was made in San Francisco; they cannot question that the ratification by the Pacific Freight Lines of this unauthorized contract was made in San Francisco; they cannot question that the performance of the contract by the attorneys was to be had in San Francisco, or that the attorneys involved had their residence and principal place of business in San Francisco, and that the payment for the attorneys' services would have to be made in San Francisco, nor can it be questioned that the payment was actually made for these services in San Francisco, because the check paying the same was forwarded to the attorneys in San Francisco.

*''The result is that every act out of which the present obligation could grow took place and was consummated in San Francisco, and not a solitary one occurred in Los Angeles.* Appellants argue, however, that an action for contribution is not based upon the original obligation out of which the duty to contribute arose, but that the payment creates a new liability or obligation, the situs of which is at the residence of the payor. Where the appellant has made its error is in the mental confusion of not distinguishing between an obligation and a cause of action. (Italics included.)

'' . . . We do not question that the right to compel contribution does not arise until such time as one of the codebtors had extinguished the original obligation and paid more than his equal share of it, but that is not the question here in-

volved. The question here involved is—where, when, and how did the original obligation of contribution arise?

" . . . As we have already stated, the obligation of contribution is created by the relationship of the parties at the time of the transaction; that it remains inchoate until payment, that payment does not create a new or different obligation but merely gives rise to a cause of action upon the existing inchoate obligation. . . . We do not question that payment creates the cause of action, but payment does not create the obligation because it existed long before the cause of action arose. Appellant has confused the creation of the obligation and the arising of a cause of action on that obligation. . . . In other words, they attempt to argue that the payment by the Pacific Freight Lines created a new obligation, to-wit, the obligation of these respondents to repay their aliquot share to the Pacific Freight Lines, and that coupled with this is a presumption that the payment of this debt, namely, this aliquot share, should be made at the residence of the Pacific Freight Lines in Los Angeles, and therefore that the situs of the obligation is at Los Angeles with no right of removal to the residence of the respondents. . . .

"Contracts are divided into three classes: express contracts, contracts implied in fact and contracts implied in law. The right of contribution is a contract implied in law, . . . "

Although manifestly well intended, respondents' above quoted argument is pure sophistry, and unless carefully analyzed is apt to be misleading. It proves nothing, however, because its premise is artificial; such an argument only tends to involve in confusion an issue that otherwise is extremely simple. The effort, therefore, of respondents to inject into the controversy the asserted distinction between an obligation and a cause of action as a material and controlling factor, is idle. For example respondents argue, as noted above, that "We do not question that payment creates the cause of action, but payment does not create the obligation because it existed long before the cause of action arose", and that, therefore, the argument continues, "The question here involved is—where, when, and how did the original obligation of contribution arise?" Logically, these questions are clearly beside the issue. All disputes as to the so-called original obligations long since were settled in the Johnson case, *supra.* To revive them would serve no purpose in connection

with the settlement of the sole question herein presented for determination; that question may be stated thus: Where was the contract made or where was it to be performed, or where did the obligation or liability arise, upon which the complaint in the within action is based? The question stated in any other form would disregard the mandate of section 16 of article XII of the California Constitution, which is controlling. In that connection respondents continue to argue from a false premise in the following manner, as above noted, "the obligation of contribution is created by the relationship of the parties at the time of the transaction; that it remains inchoate until payment, that payment does not create a new or different obligation but merely gives rise to a cause of action upon the existing inchoate obligation". The fallacy of the argument is at once evident. Although the right of contribution necessarily is related to some former transaction, actual or implied, and may be the subject of an express contract, nevertheless, in the absence of an express contract, it also may exist by operation of law, under which last mentioned circumstance it exists as a complete legal entity only. The right of contribution is referred to as being "inchoate" in 18 Corpus Juris Secundum, section 4, page 7, but such a description of the doctrine is misleading. It can have no "inchoate" existence because, by inchoate, is meant partial or incomplete. That the right by implied contract to contribution may be partial, and eventually may mature, presupposes a dormant contingent existence of some legal significance, whereas in truth it has no such distinction under the law. Corpus Juris Secundum, in another section, states the doctrine correctly as follows: " . . . The doctrine is not founded on, nor does it arise from, contract, but is founded on principles of equity and natural justice and comes from the application of principles of equity to the condition in which the parties are found in consequence of some of them, as between themselves, having done more than their share in performing a common obligation. . . . The declaration, often made, that contribution does not spring from contract is sometimes misapprehended; it only means that there need not be an express contract for it; and not that contribution cannot in any case be enforced where there was an express contract in the beginning of the transaction followed by conduct out of which the right of contribution arose; and, as shown *infra,* section 13a, the

right to contribution is recognized and enforced in courts of law on the theory of implied contract." (18 Corpus Juris Secundum, sec. 2, p. 3.) And again, in 6 California Jurisprudence, page 514, the rule appears as follows: "An action for contribution is not an action on the original contract, but is one to enforce the right of contribution upon an implied contract of each to the other, that they will share the burden equally. . . . Where two or more persons are jointly liable upon an obligation and one of them makes payment of the whole, that obligation is thereby extinguished, and the one paying has a new obligation against the others for their proportion of what he paid for them." In *Enscoe* v. *Fletcher*, 1 Cal. App. 659, 662 [82 Pac. 1075], appears the following: "There can be no dispute as to the rule that where two or more persons are jointly liable on an obligation and one of them makes payment of the whole, that obligation is thereby extinguished, and the one paying has a new obligation against the others for their proportion of what he paid for them." (To the same effect see *Hurlbut* v. *Quigley*, 180 Cal. 265 [180 Pac. 613], *Richter* v. *Henningsan*, 110 Cal. 530 [42 Pac. 1077], and *Bunker* v. *Osborn*, 132 Cal. 480 [64 Pac. 853].)

 The ground of plaintiff's cause of action is not an express contract but an implied contract, as indeed respondents, in part at least, concede, for as above noted respondents declare that "The right of contribution is a contract implied in law." Technically, the *right* of contribution is not a contract implied in law but is the product or outgrowth of a contract implied in law. Obviously plaintiff's cause of action, as above noted, is based upon such a contract, and it is therefore necessarily with relation to such a contract that the above quoted provisions of the Constitution must be considered and applied.

In the circumstances here considered, assuming the facts to be as contended for by plaintiff and appellant, plaintiff paid a debt owed in part by defendants. As a result, and by operation of law, defendants became indebted to plaintiff. It is upon this debt, which the law declares it is defendants' duty to pay, and upon the implied contract by the terms of which defendants agree to pay, that plaintiff's action is based. It is the general rule that "a debtor who is indebted on a money obligation is bound, if no place of payment is specified in the contract, to seek the creditor, and

make payment to him personally''. (*People ex rel. Columbine Mercantile Co.* v. *District Court,* 70 Colo. 540 [203 Pac. 268].) To the same effect see *Bank. of Yolo* v. *Sperry Flour Co.,* 141 Cal. 314 [74 Pac. 855, 65 L. R. A. 90] ; *Fitzhugh* v. *University Realty Co.,* 46 Cal. App. 198, 201 [188 Pac. 1023] ; *Kaupke* v. *Lemoore Canal etc. Co.,* 7 Cal. App. (2d) 362, 365 [46 Pac. (2d) 204].)

■ A debt has been defined to include any sort of obligation to pay money. (*Schwartz* v. *Brandon,* 97 Cal. App. 30, 37 [275 Pac. 448].)

■ Obviously there is no place of payment specified in the implied contract upon which plaintiff's cause of action is based. Defendants' debt is due plaintiff at its principal place of business, and it is there that the implied contract is to be performed. By reason of plaintiff's conduct at its principal place of business, and as a result thereof, the original claim was discharged and hence the liability of defendants to pay their share then and there arose. This being true, the defendants, by virtue of section 16 of article XII of the California Constitution were sued, and properly so, in Los Angeles County.

For the foregoing reasons the orders granting the motions of defendants Pioneer Express Company and United Motor Transport Lines, Inc., for a change of venue, are, and each of them is, reversed.

York, P. J., and White, J., concurred.