J. A. ROBERTSON and MARY E. ROBERTSON, Appellees, v. U. S.
     LIVE STOCK CO. and J. S. SMITH and C. M. THOMPSON,
     Defendants, and LIVE STOCK NATIONAL BANK, Intervener
     and Appellant.

Mortgages: BONA FIDE PURCHASER: BURDEN OF PROOF: EVIDENCE.
1   Where a mortgage had its inception in fraud the burden is upon
    the holder to show that he took it in good faith, for a valuable
    consideration, before maturity and without notice of the fraud.

Same. Lack of knowledge on the part of a bank and of the officers of
2   the bank, that a mortgage held by it was obtained by fraud, may
    be established by the direct testimony of all the officers who might
    or could know, or, by facts and circumstances from which the in-
    ference of want of knowledge must necessarily be drawn.

Same: ASSIGNMENT OF MORTGAGE: BONA FIDE HOLDER: CONSIDERATION.
3   The assignment of a note carries with it a mortgage given to se-
    cure the same, and the right to foreclose the mortgage; and a bona
    fide purchaser without notice takes the mortgage relieved of any
    infirmities in its inception; and extension of the time of payment
    of the mortgage is a valuable consideration.

Mortgages: ASSIGNMENT TO BANK: FRAUD: NOTICE: EVIDENCE. It
4   is not necessary under all circumstances that all the officers of
    a bank be called as witnesses to establish the fact that the cor-
    poration had no notice of the fraud entering into the making of
    a mortgage held by it as assignee. Where the managing officers
    of the bank and those who had charge of the particular transaction
    testified that they had no knowledge of the fraud and acted in
    good faith, knowledge of the bank through any other officers may
    be negatived by facts and circumstances affirmatively showing that
    it could not have had notice through any such source. Knowledge of
    the fraud is not shown in the instant case.

Appeal: TRIAL DE NOVO. An action to set aside an alleged fraudulent
5   conveyance is triable de novo on appeal, and the appellate court
    will examine the evidence and determine the ultimate facts.

*Appeal from Dallas District Court.*—HON. J. H. APPLEGATE,
                        Judge.

THURSDAY, FEBRUARY 19, 1914.

ACTION to set aside a certain conveyance of real estate, made by the plaintiff to the United States Live Stock Company, on the ground of fraud. The Live Stock National Bank intervened and claimed that, after the conveyance sought to be set aside was made and the deed executed, delivered, and recorded in pursuance of such conveyance, the United States Live Stock Company, grantees in the deed from the plaintiff, executed a mortgage on said premises to defendants Smith and Thompson to secure a note of $1,075; that said note and mortgage were sold and transferred to the intervener bank by said Smith and Thompson, for a valuable consideration, before due; and that intervener had no notice or knowledge of any fraud, perpetrated by said Live Stock Company, in securing title to the land from the plaintiff. A decree was entered dismissing intervener's petition, and intervener appeals.— *Reversed.*

*D. L. Johnson* and *Burton Russell,* for appellant.

*D. H. Miller,* for appellee.

GAYNOR, J.—On March 1, 1911, plaintiff J. H. Robertson was the owner of lot 6, block 9, in the town of De Soto, Iowa, and on that day, his wife joining with him, conveyed said lot to the defendant United States Live Stock Company by warranty deed, and the deed was on the 23d day of March, 1911, duly filed for record in the office of the recorder of deeds in Dallas county, Iowa, and duly recorded. It is conceded that the conveyance was obtained from the plaintiff by the United States Live Stock Company through fraud and misrepresentation, and that the plaintiff, by reason of such fraud, was entitled to have the conveyance set aside as between him and the said defendant.

On the 12th day of July, 1911, the defendant United States Live Stock Company executed a mortgage on the land,

so received from the plaintiff, to the other defendants, J. S. Smith and C. M. Thompson, to secure the payment of a promissory note executed by said J. S. Smith and C. M. Thompson in the sum of $1,075, at 8 per cent. interest from date until paid, and the same was filed for record and recorded in the office of recorder of deeds of said county on the 18th day of July, 1911.

The plaintiff brought this action to set aside and cancel the deed, executed by him to the United States Live Stock Company on account of the fraud practiced upon him in procuring the same, and to have the mortgage executed by United States Live Stock Company to Smith and Thompson also canceled for the same reason, alleging (and it appears to be a fact) that the United States Live Stock Company was a corporation; that defendant J. S. Smith was its president; and that Thompson was a member of defendant corporation and had full knowledge of said false representations and of the design and purpose of the United States Live Stock Company to cheat and defraud the plaintiff in said transaction. In the action so brought, the Live Stock National Bank intervened and claimed that, before the maturity of the note described in plaintiff's petition, executed by the United States Live Stock Company to C. M. Thompson and J. S. Smith, and secured by the mortgage on the land in controversy, this intervener, for a valuable consideration, purchased said note from C. M. Thompson and J. S. Smith, and the same was assigned and indorsed to it; that, at the time it purchased said note, it had no knowledge or information of the matters and things set forth by the plaintiff in his petition; and that said mortgage was duly assigned to them as an incident to said note. Wherefore intervener asks that said mortgage be foreclosed and be decreed a first lien upon said premises, and that a special execution issue for the sale of said premises, and the proceeds be applied on the payment of said note. Plaintiff files a general denial to the petition of intervener.

A decree was duly entered in favor of the plaintiff against the defendants, the United States Live Stock Company, J. S. Smith, and C. M. Thompson, and the title adjudged to be in the plaintiff, as against said defendants, and the deed, executed by the plaintiff to the United States Live Stock Company, was, as to those defendants, canceled and set aside. This decree was without prejudice to the rights of the interveners.

On September 24, 1912, after trial, the court found for the plaintiff as to the intervener, and decreed that the plaintiff is the absolute owner of lot 6, in block 9, in fee simple, as against intervener, and adjudged further that in the purchase of said note and mortgage intervener acquired no lien, right, title, or interest in said premises; that it failed to show that it acquired said note and mortgage in good faith, and without notice of the fraud practiced upon the plaintiff in securing the land, and accordingly canceling said mortgage. The intervener alone appeals.

In view of the concessions made in argument, we must assume that the United States Live Stock Company fraudulently obtained the deed to the property in controversy from the plaintiff, and that the United States Live Stock Company, in furtherance of such fraud, executed the mortgage to J. S. Smith and C. M. Thompson, and that the deed and mortgage in question, as between the plaintiff and these defendants, is fraudulent and was, by the court, rightly set aside.

This mortgage having its inception and resting in fraud, the burden rests upon the intervener to show that it took the mortgage in good faith, for a valuable consideration, before maturity, and without notice of the fraud. See *Arnd v. Aylesworth*, 145 Iowa, 185. Did it do this? The evidence shows that the intervener is a corporation, a banking corporation; that Charles F. McGrew was its president, and L. M. Lord was cashier; that it had two assistant cashiers and a vice president; that the vice president took no active part in the management of the bank and had nothing to do with the

1. MORTGAGES: bona fide purchaser: burden of proof: evidence.

management of the bank; that neither of the assistant cashiers had anything to do with the making of loans or approving loans; that they worked under the direction of the other officers of the bank; that no one was authorized to make any loans in the bank or to renew loans or make any change in loans, except the president and the cashier; that the agreement to take this note and mortgage was made on behalf of the bank, by Mr. McGrew, the president; and that McGrew represented the bank in the negotiations leading up to the taking of the note. McGrew testifies that the matter of loans was entirely looked after in the bank either by Lord or himself; that the work of the two assistant cashiers would be entirely outside of the negotiation and approving of loans. McGrew and Lord both testified, in behalf of the intervener, that they had no knowledge of any kind whatsoever of a claim that there had been any fraud perpetrated in the obtaining of the title, by the United States Live Stock Company, for the plaintiff. Neither of the assistant cashiers were called to testify.

The question here is not, did McGrew or Lord have notice of the fraud? but did the bank have notice? The burden was on the bank to show that it did not. It has been frequently held that denial of notice, by one who purchases an instrument, that it had its inception in fraud, even though uncontradicted by other witnesses, is not sufficient to justify the court in directing a verdict in his favor. See *McNight v. Parsons,* 136 Iowa, 390. But it has also been held, that, although the uncontradicted evidence of the buyer of fraudulent paper is not sufficient to justify the direction of a verdict, yet the facts and circumstances supporting the denial of notice may be such as would warrant such a direction, but this only in case where the facts and circumstances are such that a reasonable man could not draw therefrom any other conclusion than that contended for.

The mere fact, therefore, that there are other officers of the bank who were not called to testify does not in itself

negative a conclusion that the bank did not have notice. Where the officers of the bank, who had charge of the trans-action in question, and who acted for the bank in the con-summation of the matter out of which the controversy arose, are called as witnesses, and testified that they had no notice or knowledge of the fraud prior to or at the time the deal was consummated, and it is apparent from all the facts and circumstances disclosed by the record that the other officers, who were not called, could not, from the nature of the trans-action and the manner in which it was carried on, have notice of the matters charged as constituting fraud, the testimony will be sufficient to negative the existence of knowledge on the part of the bank.

The existence or non-existence of a disputed fact may be established by facts and circumstances, as well as by direct testimony. While a jury or a court is not bound to accept the testimony of any witness as absolutely true, yet neither the court nor the jury has a right to disregard the testimony of a witness or refuse to accept a fact as established, where all the facts and circum-stances corroborate the witness, and the testimony of the witness and the facts and circumstances show affirmatively the existence or the non-existence of the disputed fact.

2. SAME.

The want of notice on the part of the intervener in this case, the want of notice on the part of every officer of the intervener, may be established by direct testimony of all the officers who might or could know; or it may be established by facts and circumstances from which the inference of want of knowledge must necessarily be drawn.

As said in *Arnd v. Aylesworth, supra:*

Whether plaintiff has sufficiently satisfied the burden resting upon him and made good his claim to be an innocent purchaser is therefore a question for the jury, save in those instances where the testimony is not only consistent with the good faith of such purchase, but is such that no fair-minded person can draw any other inference therefrom. A cate-

gorical denial of notice or of knowledge is something which in many, if not in most, instances cannot be opposed by direct proof; and the credibility of the witnesses, their interest in the case, the reasonableness or unreasonableness of their statements, the time, place, and manner of the transaction, its conformity to or departure from the ordinary methods of business, and all other facts and circumstances which, though of slight moment in themselves, yet, when taken together, give character and color to the purchase,  . . .  constitute a showing which the court cannot properly pass on as a matter of law.

In all these cases the testimony might be insufficient to establish bad faith and still not affirmatively establish good faith. The burden is on the intervener, in this case, to establish good faith. See, also, *Bennett State Bank v. Schloesser,* 101 Iowa, 571.

It appears from this record that the deed from the plaintiff to the United States Live Stock Company was executed on the 1st day of March, 1911; that the same was recorded on the 23d day of March, 1911; that the mortgage in question, executed by the United States Live Stock Company to Smith and Thompson, was made on the 12th day of July, 1911, and filed for record on the 18th day of July, 1911; that the intervener bank purchased this note and mortgage from Smith and Thompson on the 12th day of July, 1911, on the same day that it was executed, and before it was recorded. It appears that this note and mortgage was taken by intervener as collateral security for the payment of a judgment obtained by the intervener against Smith and Thompson, on which intervener was threatening to issue an execution. Smith and Thompson delivered this note and mortgage to the intervener on condition that they would not issue execution upon the judgment, with the further consideration that intervener would not enforce the collection of the judgment until the expiration of the time for which the note purchased ran. That was sixty days. There was no agreement that the judgment should be released.

Lord testifies that he had nothing to do with the negotiations which led up to the giving of the note. That was carried on by McGrew. He said:

Personally I don't know whether the note was secured, because I did not take it. I do not know that the mortgage, purporting to secure a note of that amount, given by the United States Live Stock Company to the parties to this note, was received by our bank on the 12th day of July, 1911. I do not recall from whom I received the mortgage. I sent it for record. I knew about the United States Live Stock Company. That its headquarters were at Omaha. That it was a corporation. Mr. Smith told me he was one of the members. Mr. Thompson also told me he was a member. I heard of this company as early as 1909. Learned of it in conversation with Thompson. This was about six months after we made the loan upon which we obtained judgment. I heard that the United States Live Stock Company had taken over the business and debts of Smith and Thompson, but we had no business with the United States Live Stock Company until we acquired the note and mortgage in controversy. Before we acquired the note in suit, we had heard nothing of the United States Live Stock Company's being in trouble with different people in the trading of horses on the range. I did hear of their having trouble with the City National Bank in Omaha, and that they were sued.

It appears that the note and mortgage in question had not been executed at the time that McGrew talked with Smith and Thompson. One D. L. Johnson, called for intervener, testified as follows:

I am an attorney at law, living at Omaha, Neb., and am acquainted with the Live Stock National Bank of South Omaha and with the United States Live Stock Company and Mr. Smith and Mr. Thompson of that company. On or about July 12, 1911, I had a transaction with J. S. Smith and C. M. Thompson and the United States Live Stock Company in behalf of the Live Stock National Bank. This was in reference to the securing of an indebtedness of Mr. Smith and Mr. Thompson to the Live Stock National Bank

of South Omaha. Exhibit 1 is a promissory note dated July 12, 1911, on 60 days' time, in favor of J. S. Smith and C. M. Thompson, for $1,075, with 8 per cent. interest from date, executed by the United States Live Stock Company by J. S. Smith, president, attested by E. O. Ames, secretary, with the indorsement of payment guaranteed and protest waived, C. M. Thompson and J. S. Smith. That is the note in suit, and the body is in my own handwriting. I did not see the parties sign it. Exhibit 2 is a real estate mortgage given by the United States Live Stock Company securing the $1,075 note to which I have referred, and which is marked Exhibit 1, and it is on property in this county. The note and mortgage just referred to were taken at the time of the transaction mentioned in my testimony. None of the officers of the Live Stock National Bank of South Omaha were present. I had no knowledge in the least at the time of any fraud, if there was any fraud, in acquiring of the title by the persons giving the mortgage. The note and mortgage were taken in the name of J. S. Smith and C. M. Thompson, and by them indorsed, instead of in the name of the bank, for the reason that the original indebtedness was that of Mr. Smith and Mr. Thompson, and I did not care to release them, and I made the note payable to them, and then asked them to indorse it and waive protest so that they would be held individually. The note and mortgage were taken for the payment of an indebtedness evidenced by a judgment in the district court of Douglas county, Neb. Mr. Smith and Mr. Thompson, I am not certain which, said to me that they would give this security if we would give them an extension of 30 days on the indebtedness and reduce the interest from 10 per cent., the amount the judgment bore, to 8 per cent. Before taking this note and mortgage, I satisfied myself in some way, whether it was by my own correspondence or that of others I do not know, that the title to these lots stood in the name of the United States Live Stock Company and were clear of incumbrance. I believe there was an abstract, but of that I am not certain. Mr. Smith or Mr. Thompson has paid $541.45 on this claim since suit was brought. $541.45, less $54.15 collection fee and $31.96, being the total of $86.11. The $31.96 being expenses of my own in this case. The date of the payment was May 7, 1912, and the net amount $455.54.

This was practically all the testimony that was submitted on this branch of the case.

The assignment of the note carried with it the mortgage and the right to foreclose upon the mortgage.

3. SAME: assignment of mortgages: bona fide holder: consideration.

See *Preston, Kean & Co. v. Morris Case & Co.*, 42 Iowa, 549.

One who receives a mortgage, in good faith, for a valuable consideration, without notice of any infirmities in its inception, takes it relieved of such infirmities. See *Farmers' National Bank of Salem v. Fletcher*, 44 Iowa, 252; *Updegraft v. Edwards*, 45 Iowa, 513; *Vandercook v. Baker*, 48 Iowa, 199.

The giving of further time for the payment of an existing debt is a valuable consideration. See *Koon v. Tramel*, 71 Iowa, 132.

As stated before, the only question here is: Did the bank, the intervener, have notice of the fraud involved in the transaction between the plaintiff and the United States Live Stock Company, by means of which

4. MORTGAGES: assignment to bank: fraud: notice: evidence.

plaintiff was induced to convey the land to the United States Live Stock Company? The burden of proof is on the intervener to show that it did not have notice or knowledge. The president and the cashier, who were the managing officers of the bank, and who had control of the bank's business and the making and extending of loans, testified that they had no knowledge. This has been held not sufficient, in and of itself, in all cases, to justify a finding that the bank did not have notice. It is said that other officers of the bank may have had notice, and that this would charge the bank with notice. It has never been held that it is absolutely essential to call every officer and agent of a bank into court and have him testify directly that he had no notice of the fraud, in order to carry the burden to a successful issue on the part of the bank. The testimony of the managing officers and those who had charge of and managed the particular business for the bank, and

who acted for the bank in the particular transaction, having been called and having testified that they had no knowledge but acted in good faith in the transaction, the knowledge of the bank, through any other officer, may be negatived by facts and circumstances which affirmatively show that the bank could not have had knowledge through any such source. Concerns of this kind, transacting large business and having many officers and agents in the transaction of business, through whom notice might be conveyed, suggests the necessity of negativing knowledge conveyed through any of these channels, and this is best done by calling the parties to testify, by and through whom such knowledge might be communicated.

But it would be a serious burden and handicap to the legitimate transaction of business of this kind to require, in every transaction, that the bank purge itself by calling, as witnesses in its behalf, every officer or agent through whom notice might possibly be communicated to the bank, or whose knowledge or notice would bind the bank. It would be sometimes impossible to do this, and the law does not require it. It is sufficient that the officers, through whom the business was transacted, are shown not to possess notice or knowledge of the fraud, with proof that negatives, to a legal certainty (that is, to as much certainty as can be secured in the administration of the law), that the other officers and agents could not, in the nature of things, and therefore did not, have notice or knowledge such as would charge the bank with notice of the fraud.

This case is triable *de novo* in this court. It is our duty to examine the testimony presented and determine the ultimate fact therefrom. With all due respect to the learned judge who tried the case below, we are forced to a different conclusion than that reached by him on the record made, and we find that no other conclusion can be fairly reached from this record other than that the intervener did not have notice or knowledge of the

5. APPEAL: trial de novo.

fraud charged at the time it purchased the note in question. This conclusion seems inevitable from the whole record, unless it should be held necessary that the intervener should call all the other officers and agents of the bank and have them testify that they had no knowledge, in order to carry the intervener's claim to a successful issue. This we cannot hold. See *Des Moines Savings Bank v. Arthur*, 163 Iowa, 205.

The case is therefore reversed and remanded, with instructions to enter a decree in favor of the intervener in accordance with this opinion.—*Reversed.*

LADD, C. J., and DEEMER and WITHROW, JJ., concur.