McLAUGHLIN-GORMLEY-KING COMPANY, Appellant, v. E. J. HAUSER et al., Appellees.

**TRIAL: Direction of Verdict—Fraud as a Defense.** A verdict can very rarely be directed in favor of one who has the burden of proof on the defensive plea of fraud. Evidence held insufficient to so direct.

**BILLS AND NOTES: Holdership in Due Course—Failure of Proof Per Se.** The court may not say that a plea of holdership in due course is overcome *per se* by the failure of such alleged holder to call as a witness its president, who did not negotiate for the note.

**BILLS AND NOTES: Holdership in Due Course—Note Payable to Fictitious Payee.** There cannot be a holder in due course of an apparently negotiable promissory note when, in truth and in fact, the payee is a fictitious name, and such fact was unknown to the *maker* of the note. Evidence reviewed, and held to present a jury question as to the knowledge of the maker.

BILLS AND NOTES:   Holdership in Due Course—Pre-Existing Debt
as "Value."   A showing that the indorsee of a negotiable promissory note took the same as collateral security to a valid pre-existing indebtedness in a named amount is a sufficient showing of a taking for value on the part of the indorsee.

BILLS AND NOTES:   Holdership in Due Course—Waiving Right to Collateral.  The holder of negotiable promissory collateral does not waive his right thereto by bringing suit on the secured debt and levying on property other than said collateral.

*Appeal from Jasper District Court.*—D. W. Hamilton, Judge.

FEBRUARY 13, 1923.

ACTION at law upon four promissory notes, aggregating $11,000, and each signed by the eight defendants. The plaintiff was not the payee of the notes, but took the same as an alleged holder in due course. The defendants pleaded that the notes were obtained from them by fraud, and that they were negotiated in breach of faith, and without authority. The trial court directed a verdict for the defendants. The plaintiff appeals.—*Reversed.*

*Don E. Neiman* and *E. M. S. McLaughlin,* for appellant.

*Lundy, Peisen & Soper, Lee & Garfield,* and *Cross & Hamill,* for appellees.

EVANS, J.—Two of the notes sued on are for $2,500, each dated December 5, 1919, and due September 1, 1920, with 8 per cent interest after maturity. The other two notes are for $3,000 each, of like date with the former, but due on October 1, 1920, with interest after maturity. They are signed by all the defendants. They were all payable to the Gibford Chemical Company. They purported to carry the indorsement of such payee, by R. B. Gibford. These notes are a small part of a series, all delivered at the same time, and amounting to $500,000, and all signed by the same makers to the same payee. The transaction is quite inexplicable upon any hypothesis of common sense. The makers received no consideration for any of these notes. They

supposed they were parting with nothing. They were persuaded that their notes were to be used as a convenient and original method of bookkeeping, and were to measure the volume of business which the payee was about to do in the sale of "hog remedies" in the respective localities of the different signers, from which business, when transacted, great profits were to result to the payee, and gratuities were to flow like brooks in the direction of the makers; and that the notes, having served their bookkeeping functions, were thereafter to be faithfully returned to the makers. These defendants, at the time of the transaction, were quite unacquainted with each other. They lived in different localities: one at Dows; one at Popejoy; one at Iowa Falls; one at Union; one at Marshalltown; one at Montezuma; and one at large on a farm in the heart of Hardin County. Promoters of the scheme had conferred singly with each one, and, after due preliminary preparation, had invited each to a banquet at a hotel in one of the towns, and all attended. It was at the time of this banquet, in January, 1920, that the notes were delivered, although some of them had been signed previously, and delivery withheld. At the banquet, it was represented that the Gibford Chemical Company was a corporation recently organized, with a capital of one and one-half million dollars. This was a false representation. It was proclaimed that the corporation had such an abundance of working capital that it had no need of procuring funds from any other source. In order to allay the lingering timidity of some of the makers lest their notes should get into circulation by negotiation, the use of revenue stamps thereon was omitted, and this was done upon the suggestion of the promoters of the scheme, which suggestion was made with some display, as evidence of their good faith in the proposed protection of the makers against liability thereon. The Gibford Chemical Company was not a corporation, nor was it a partnership. It was simply a trade name which had been adopted by R. B. Gibford. Gibford was present at the banquet as the chief promoter, and it was he who asserted the corporate character of his company. Gibford negotiated the notes in suit to the plaintiff company. This company was his bona-fide creditor for goods furnished him in his business to the amount of $5,900. The plaintiff took the notes as collateral security for

such account. It also released at the same time certain other notes which it had previously held as collateral.

At the close of the evidence, the trial court directed a verdict for the defendants. The one question presented on this appeal is, Was the evidence such as to leave any question for the consideration of the jury? The execution and delivery of the notes being admitted, and the defendants having interposed an affirmative defense of fraud, the burden was upon them to prove the defense. Such a defense ordinarily, if not necessarily, presents a jury question. We look, therefore, to the brief of the appellees for the grounds upon which they purport to sustain the action of the trial court in taking the case from the jury.

I. It is contended first by appellees that the proof of the fraud in the inception of the transaction is undisputed and overwhelming, and that the burden of proof was thereby cast upon the plaintiff to show itself a holder in due course; that the plaintiff failed in such proof in one essential, in that the president of the plaintiff corporation was not used as a witness. We think that the action of the court is not sustained on this ground. The evidence of fraud in the inception of the transaction was quite abundant to go to the jury and to sustain a finding of fraud by the jury, if it had been made. It does not follow that the jury were bound to so find. It is a rare case where a verdict may properly be directed in favor of a party having the burden of proof on a question of fraud. Granted that the facts relied on as elements of the fraud might, if conceded, be sufficient to justify the court in finding that they amount to a fraud, as a matter of law, yet in this case, the credibility of the evidence in support of such facts was a question for the jury. Nor can we say, upon this record, that the failure of the plaintiff to call the president of the company as a witness amounted to a failure of proof, as a matter of law, that the company was a holder in due course. The plaintiff did call as witnesses the persons who transacted the business which resulted in the negotiation of these notes. Whether that was sufficient proof of good faith to satisfy the jury was a question *for* the jury.

*1. Trial: direction of verdict: fraud as a defense.*

*2. Bills and notes: holdership in due course: failure of proof per se.*

II. It is urged that the defendants signed the note, believing the payee to be a corporation; that it was represented to be thus, and was not thus in fact; that it was, therefore, a

3. BILLS AND . NOTES: holder-ship in due course: note payable to fictitious payee.

fictitious payee; and that its fictitious character was not known to the makers. Under Section 3060-a9, Code Supplement, 1913, an instrument "when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable," is payable to bearer.

If the fictitious character or nonexistence of the payee was not known to the maker, then impliedly the instrument is not payable to bearer. Necessarily, it cannot be payable to a non-existing payee. Nor does this statute confer authority upon any person to indorse a note in the name of a fictitious or nonexisting person, where the nonexistence or fictitious character of the payee was not known to the maker. A purported indorsement in such a case is without authority, and comes within the provisions of Section 3060-a23, Code Supplement, 1913, which is as follows:

"Sec. 3060-a23. Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

In *American Exp. Co. v. Peoples Sav. Bank,* 192 Iowa 366, we held the foregoing section to be applicable to such an indorsement. There is no provision of the Negotiable Instruments Act whereby a negotiable indorsement can be made of such an instrument as we here assume. It necessarily follows that even a good-faith purchaser who should otherwise be deemed as a holder in due course must take notice of the character or authority of the indorser through whom he takes his title. The plaintiff in this case was charged with the inquiry, and therefore with notice of the extent of the authority of R. B. Gibford to make the indorsement under which it purports to hold the instrument.

It is not denied in this case that these instruments were

payable to a fictitious and nonexisting person. If it be true, therefore, that such fact was not known to the makers, then the plaintiff could not become a holder in due course pursuant to the indorsement or delivery by Gibford, however honest in fact its acquisition thereof might be. ·

Does it follow that the trial court was justified in directing a verdict on this ground? On the one hand, it is contended that the defendants knew the fictitious character of the payee. On the other hand, it is denied. It appears that for some years Gibford had used the designation "Gibford Chemical Company" as a trade name. This fact was known by the defendants. Some of them had previously done business with Gibford under that name. This evidence was admissible, as bearing upon the question of the knowledge and real intent of the makers. As against this, they offered evidence that, prior to the termination of the negotiations and the delivery of the notes, Gibford represented that his business had been taken over by a corporation organized for that purpose; that its stockholders included several prominent and reliable men named by him; that its capital was large and abundant. The makers had a right to rely upon these representations, if they were made, and had a right to act upon them. They would not necessarily be precluded therefrom by the fact that the corporation had adopted the former trade name of Gibford. The credibility of their evidence is assailed by plaintiff on the ground that they made no inquiry or attempt to verify the truth of the representations of Gibford, though they could have ascertained their falsity with slight effort. They were not legally bound to make such inquiry. The fact, however, that they did not make it, when they could have done so with slight effort, is a circumstance proper for the consideration of the jury in weighing their testimony. We deem it clear that the question of fact as to whether the defendants knew the fictitious character of the payee was a question for the jury.

III. It is next urged by appellees that there was no proof of the value of the consideration paid by the plaintiff for the notes in question. It is urged that, under Section 3070 of the

4. BILLS AND
NOTES: holder-
ship in due
course: pre-
existing debt as
"value."

Code; the plaintiff was entitled, at best, to re-cover only the amount paid by it, and that, in the absence of evidence on that question, there was not sufficient data before the court to warrant any judgment whatever.

Whether Section 3070 is to be deemed still in force, or whether it was impliedly repealed by the adoption of the Negotiable Instruments Act, we have no occasion herein to consider. It does appear from the plaintiff's evidence that it had a valid pre-existing and accruing account against Gibford of about $5,900. These notes were taken as collateral security therefor. Under Section 3060-a25, this pre-existing indebtedness constituted a sufficient consideration. The direction of the verdict, therefore, was not warranted upon this ground.

IV. It is further urged that the plaintiff waived its right to the notes as collateral security, in that, while it held them, it brought an action at law against Gibford and sued out an

5. BILLS AND
NOTES: holder-
ship in due
course: waiv-
ing right to
collateral.

attachment therein and levied the writ of attachment upon other property. We know of no authority for the legal proposition thus put forward. No authority therefor is cited. We deem it without merit.

It is our conclusion that, under the evidence, the case presents a jury question. The order of the court directing a verdict and entering a judgment upon such verdict is, therefore, reversed.—*Reversed and remanded.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.