FARMERS & MERCHANTS STATE BANK, Appellant, v. JUNE BARNES et al., Appellees.

**BILLS AND NOTES: Holdership in Due Course—Jury Question.** On the issue of holdership in due course, a jury question may arise on a showing of (1) the nature of the consideration paid for the note; (2) an element of equivocation as to the time when the note was acquired; (3) the failure of the holder to call as a witness his own agent who purchased the note; and (4) the fact that the original payee was required to guarantee payment of the note.

**WITNESSES: Impeachment—Contradictory Statements.** On the issue of holdership in due course of a negotiable promissory note, the letters of the original payee, tending to show his ownership of the note subsequent to the time when he claims to have sold it, are admissible for impeaching purposes.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHINSON, Judge.

OCTOBER 24, 1924.

ACTION to recover past-due interest on a promissory note. Verdict and judgment for defendants, and plaintiff appeals.— *Affirmed.*

*W. B. Bedell, E. T. Bedell,* and *H. E. Narey,* for appellant.

*Roseberry & Roseberry,* for appellees.

STEVENS, J.—This is an action to recover $1,280 past-due interest on a negotiable promissory note for $8,000, executed July 24, 1920, by appellees to one F. L. Whipkey, and some time

1. BILLS AND NOTES: holder-ship in due course: jury question.

about the middle of December transferred to the appellant bank, as it claims, for value, without notice of infirmities. The defense pleaded was fraud in the inception of the instrument.

But three propositions are involved: (a) Was the evidence of fraud sufficient to carry that issue to the jury; (b) did appellant discharge the burden of showing good faith by such a quantum of proof as to exclude all questions of fact, and to present only a question of law for the court; and (c) was it error for the court to admit certain exhibits to which appellant objected? A motion to direct a verdict for the plaintiff, made at the conclusion of appellant's testimony and renewed after both parties had rested, was overruled by the court. The instructions are not complained of.

The consideration for the note, which does not mature until July 11, 1925, was a part of the purchase price of growing crops, consisting of corn and oats, and a quantity of live stock and farm implements upon a farm in Minnesota. Appellees testified that the price agreed upon for the property was $18,000, to be paid: $1,000 cash, $8,000 by the note in question, and the balance the following summer or winter, when convenient to appellees. Whipkey, of whom the property was purchased, testified that the agreed price was $20,000, and that same was to be paid, in addition to the $1,000 and the note for $8,000, by the assumption of an indebtedness of his to the State Bank of Kerkhoven, Kerkhoven, Minnesota, for $5,000, payment of which was secured by an unrecorded chattel mortgage and by another note, which was never executed, for the balance, of $6,000.

I. The fraud charged consisted of alleged misrepresentations as to the condition and value of a tractor and binder, in the number of acres of corn, and that the property was free and clear of incumbrances. The evidence of appellees' witnesses tended to show that the binder, which was put in the deal at $1,000, and the tractor, were not in good condition, but practically worthless; and that there was not within 40 or 50 acres of the number represented by Whipkey at the time of the purchase. The Kerkhoven bank, two days after the note was executed, placed of record a chattel mortgage, given to secure the

indebtedness of Whipkey for $5,000. Later, when some of the stock was sold, Whipkey accompanied the shipment to St. Paul, and the proceeds were remitted to the Kerkhoven bank, and applied on the indebtedness referred to. Appellees rescinded the contract, and the property was sold or turned back to Whipkey, who, together with an officer of the Kerkhoven bank, testified that appellees were informed as to the mortgage which matured the following November, and that they assumed it as a part of the purchase price. This they all denied. The issue of fraud was clearly one for the jury.

II. The negotiations resulting in the purchase by appellant of the note were conducted by the assistant cashier, who was not called as a witness by appellant, and who did not testify upon the trial. The cashier, with whom Whipkey also talked about the note, testified that he knew nothing of any infirmities in the instrument, and that he would have been informed by the officer negotiating the purchase if he had obtained knowledge of the fraud charged, or of such facts and circumstances as made the taking of the instrument bad faith on the part of the bank. The burden rested upon appellant to prove that the bank became the holder of the note, and without notice of defects or infirmities of the title therein. No citation is necessary on this point.

A letter written by Mrs. O. E. Barnes, one of the appellees, to appellant, advising it that payments had been made upon the note which had not been indorsed thereon, and inquiring as to whether money had been advanced on the note by the bank, was introduced in evidence. The cashier of appellant bank replied to this letter on January 27, 1921, acknowledging its receipt, advising Mrs. Barnes that the note contained no indorsements, and requesting information as to the amount paid; but said nothing as to whether the bank claimed to be the owner of the note, or as to the amount, if anything, which it had advanced to the payee. There was another letter, bearing date February 4, 1921, written by Whipkey to June Barnes, demanding that he immediately take care of a bad check given to him, and offering:

"If you fellows dig up $3,500 apiece by the first of March,

I will surrender the $8,000 note I hold against you people, and I will throw off interest. * * *"

The assistant cashier of the bank, who negotiated the purchase of the note, was not called as a witness to testify as to the *bona fides* of the transaction. The cashier, who did not claim to have heard the conversation, testified as we have already stated. The only other witness as to this transaction was the payee of the note. The consideration paid by the bank for the note was the delivery of seven small notes which it held against Whipkey, varying in amount from $106 to $1,500, aggregating $6,600, and approximately $1,400 in cash. Payment of the $8,000 note was guaranteed by Whipkey.

It would seem too clear for controversy that the record presented only a question of fact, and not a question of law. The court could not say, as a matter of law, that the burden imposed by the statute upon appellant was discharged, and that there was no issue of fact to be submitted to the jury. The question is foreclosed by our prior decisions. *Robertson v. United States Live Stock Co.*, 164 Iowa 230; *German American Nat. Bank v. Kelley*, 183 Iowa 269; *Mooers v. Stalker*, 194 Iowa 1354; *McLaughlin-Gormley-King Co. v. Hauser*, 195 Iowa 224.

III.  This brings us to the question of the admissibility of the letter written by Whipkey to June Barnes, referred to above, and the other exhibit, which was a certified copy of the mort-

2. WITNESSES: impeachment: contradictory statements.

gage held by the Minnesota bank. The letter was offered as a part of the cross-examination of Whipkey, who testified that he transferred the note to the bank in December, 1920. It was certainly competent for appellees to show that the witness had made declarations which were contrary to his testimony, claiming to be the holder of the note two months succeeding the date on which he claimed to have transferred it to appellant. This was the purport and the purpose for introducing the letter in evidence. It was clearly competent, and its exclusion would have been error. The mortgage was conceded, and the admission of the certified copy, even if for any reason erroneous, was without prejudice.

There is no reversible error in the record, and the judgment is—*Affirmed.*

ARTHUR, C. J., and DE GRAFF and VERMILION, JJ., concur.