FIRST NATIONAL BANK OF FAIRFIELD, Appellee, v. R. C. DUTTON et al., Appellants.

**BILLS AND NOTES:** Holdership in Due Course—Proof Justifying
1 **Directed Verdict.** Testimony (uncontradicted and unimpeached by circumstances or otherwise) by those officers and employees of a corporation (1) who had charge of or anything to do with the purchase of a negotiable promissory note, and (2) who had knowledge of such contemplated purchase, to the positive effect that they had no notice, prior to purchase, of any fraud or invalidating circumstance in the inception of the note, will justify a directed verdict in favor of plaintiff. *In such case, a directed verdict will not be denied because of the absence of the denial of a deceased officer whose participation in and knowledge of the purchase is impliedly negatived.*

**BILLS AND NOTES:** Holdership in Due Course—Evidence—Jury Ques-
2 tion. Testimony relative to the purchase of a promissory note by a bank, to the failure of the officers to make inquiry relative to the transaction out of which the note arose, and to the knowledge of the officers that the business out of which the note arose was a failing venture, reviewed, and held to present no jury question on the issue of holdership in due course.

Headnote 1:  8 C. J. p. 1063.  Headnote 2:  8 C. J. p. 1063.

*Appeal from Henry District Court.*—JAMES D. SMYTH, Judge.

FEBRUARY 17, 1925.

ACTION on a promissory note. Defense, fraud. Directed verdict for the plaintiff. Defendants appeal.—*Affirmed.*

*F. S. Finley* and *McCoid & McCoid,* for appellants.

*Starr & Jordan* and *McAdam & Nelson,* for appellee.

ALBERT, J.—I. About October 1, 1920, one L. G. Boies was the owner of the Union Telephone Company, and traded it to the defendant R. C. Dutton for his farm, situated in Henry

County, Iowa. In said transaction Dutton
executed to Boies the note for $4,000 sued on
herein; and on the 18th day of October, 1920,
Boies indorsed this note to the plaintiff. Plain-
tiff sued Dutton and Boies on said note. De-
fendant Dutton pleaded fraud in the inception of the note.
Plaintiff replied that it was an innocent purchaser. Boies ap-
peared, and filed an answer admitting that judgment should be
entered against him. At the close of all the testimony, the
plaintiff filed a motion for a directed verdict in its favor, which
was sustained by the court, the substance of which, so far as
material to our views in the case, is that the plaintiff has pro-
duced the quantum of proof necessary to establish its plea of
innocent purchaser, to warrant the court in directing a verdict
in its favor. The appellant Dutton claims that the evidence in-
troduced showing that the plaintiff was an innocent purchaser
is wholly insufficient in two respects. The evidence shows that
one Marcey was a director on the loan board of the appellee
bank at the time the bank took said note from Boies. Marcey
was not used as a witness in the case. Dutton therefore insists
that, because the appellee did not use Marcey as a witness, it
has not produced the quantum of proof necessary under such
circumstances.

. The record is wholly wanting in evidence showing that
Marcey knew of or had anything to do with this transaction. It
is equally wanting in evidence to show that he did not know
of or have something to do with said transaction. The only
evidence of any character bearing on either of these propositions
is the evidence of the cashier, Bangs: "I handled the transac-
tion between Boies and the bank, myself."

The record shows that Marcey died about a month after the
bank became possessed of this note.

Appellant urged the application of the rule announced in
the case of *McLaughlin-Gormley-King Co. v. Hauser*, 195 Iowa
224, as the controlling rule herein.

In considering the *Hauser* case, it is to be remembered that
the district court, in that case, directed a verdict for the defend-
ants, and the plaintiffs appealed. Part of the opinion which
has to do with the matters under consideration reads as follows:

1. BILLS AND
NOTES: holder-
ship in due
course: proof
justifying
directed ver-
dict.

"Nor can we say, *upon this record,* that the failure of the plaintiff to call the president of the company as a witness amounted to a failure of proof, as a matter of law, that the company was a holder in due course. The plaintiff did call as witnesses the persons who transacted the business which resulted in the negotiation of these notes. Whether that was sufficient proof of good faith to satisfy .the jury was a question *for* the jury."

The *record* referred to in the above quotation, on inspection, shows that the salesman, before he procured the four promissory notes therein sued on,. went to the home office of the plaintiff corporation in Minneapolis, and had an interview with the president of the company, and talked over with him the transaction out of which these notes grew, before the transaction was completed, thus showing knowledge on the part of the president prior to the time his company accepted the notes. Under such circumstances, of course, the failure of the plaintiffs to use the president as a witness would at least make a question for the jury.

The question of just what officers of the appellee bank, and how many of them, must testify, in order to warrant the court in directing a verdict for the bank on the ground of its being an innocent purchaser, is rather an unsettled question under our decisions, where the bank is a corporation. It seems to be settled in this state that, where the bank is a partnership, all partners must testify, denying notice. *Commercial Bank of Essex v. Paddick,* 90 Iowa 63, at 66; *Frank & Darrow v. Blake,* 58 Iowa 750. In *Bennett State Bank v. Schloesser,* 101 Iowa 571, the cashier alone testified. He did not say that he had the sole charge of the transaction, or in fact that he transacted the business of the purchase of the notes, but simply says that neither he nor the other officers of the bank had any knowledge of the matter pleaded by the defendants in defense to said notes. No objection was interposed to this evidence whereby the cashier undertook to testify to want of notice on the part of all the other officers of the bank. Nevertheless, as to them, his testimony was not conclusive, and made a question for the jury. *Bank of Bushnell v. Buck Brothers,* 161 Iowa 362.

In the case of *McNight v. Parsons,* 136 Iowa 390, it is said,

in a general way, that the undisputed testimony of the cashier is not necessarily sufficient to enable the court to say, as a matter of law, that he received the note in good faith. Such evidence does negative notice or knowledge on the part of other officers of the bank. Later, in the case of *Robertson v. United States Live Stock Co.*, 164 Iowa 230, at 234, we said:

"It has been frequently held that denial of notice, by one who purchases an instrument, that it had its inception in fraud, even though uncontradicted by other witnesses, is not sufficient to justify the court in directing a verdict in his favor. * * * But it has also been held that, although the uncontradicted evidence of the buyer of fraudulent paper is not sufficient to justify the direction of a verdict, yet the facts and circumstances supporting the denial of notice may be such as would warrant such a direction; but this only in case where the facts and circumstances are such that a reasonable man could not draw therefrom any other conclusion than that contended for. The mere fact, therefore, that there are other officers of the bank who were not called to testify, does not, in itself, negative a conclusion that the bank did not have notice. Where the officers of the bank who had charge of the transaction in question, and who acted for the bank in the consummation of the matter out of which the controversy arose, are called as witnesses, and testified that they had no notice or knowledge of the fraud prior to or at the time the deal was consummated, and it is apparent from all the facts and circumstances disclosed by the record that the other officers, who were not called, could not, from the nature of the transaction, and from the manner in which it was carried on, have notice of the matters charged as constituting fraud, the testimony will be sufficient to negative the existence of knowledge on the part of the bank. The existence or nonexistence of a disputed fact may be established by facts and circumstances, as well as by direct testimony. While a jury or a court is not bound to accept the testimony of any witness as absolutely true, yet neither the court nor the jury has a right to disregard the testimony of a witness or refuse to accept a fact as established, where all the facts and circumstances corroborate the witness, and the testimony of the witness and the facts and circumstances show affirmatively the existence or the nonexistence of

the disputed fact. The want of notice on the part of the intervener in this case, the want of notice on the part of every officer of the intervener, may be established by direct testimony of all the officers who might or could know; or it may be established by facts and circumstances from which the inference of want of knowledge must necessarily be drawn."

In the case of *Perry Sav. Bank v. Fitzgerald,* 167 Iowa 446, we said:

"Plaintiff bank is a corporation. Plaintiff placed some of its officers on the stand, but not all of them, to show that the bank had no notice of the defect in the note. Defendant cites *Bank v. Buck,* 142 N. W. 1005, to sustain his contention that the plaintiff had not met the burden cast upon it to show the want of notice and good faith. But in that case the question was not raised or decided whether such burden is met by a showing by the only officer who was concerned in the transaction. The evidence in this case is undisputed that John Carmody, the cashier, was the only officer purchasing notes, and that he was the only one who had to do with the purchase of this note. Under such circumstances, the holdings are that the burden is met by his evidence, in the absence of other circumstances."

We have intimated, if not decided, in some of our cases, such as *Connelly v. Greenfield Sav. Bank,* 192 Iowa 876, and *Arnd v. Aylesworth,* 136 Iowa 297, and kindred cases, that, although the officers specifically denied notice, yet at least its credibility is for the jury, hence making a jury question.

If these pronouncements were followed to the conclusion contended for by appellant, then in every case where a prima-facie case of fraud is made by defendant, thereby casting the burden on the plaintiff to show that it was an innocent purchaser, it would have to go to the jury on the question of the credibility of witnesses tendered to establish that plaintiff was an innocent purchaser. We refuse to acquiesce in any such construction of that line of cases.

In *Second Nat. Bank of New Hampton v. Scanlon,* 196 Iowa 1305, we said:

"This contention of appellees' is too broad and sweeping, and is not in line with the previous holdings of this court. The

evidence that the transferee of a negotiable instrument is a holder in due course may be so indubitable as to make it the duty of the trial court to direct a verdict in behalf of the holder of such instrument, even though it be established that the instrument was induced by fraud on the part of the original payee. *Central State Bank v. Spurlin,* 111 Iowa 187; *Johnson v. Buffalo Center St. Bank,* 134 Iowa 731; *Arnd v. Aylesworth,* 136 Iowa 297; *Robertson v. United States Live Stock Co.,* 164 Iowa 230; *City Nat. Bank of Auburn v. Mason,* 192 Iowa 1048; *Grinnell Sav. Bank v. Gordon,* 195 Iowa 208. It is also true that, although the payee may offer testimony direct and positive to the effect that he is a holder in due course, still the facts and circumstances surrounding the transaction may be such as to leave the question as to whether or not the payee is a holder in due course, one for the determination of the jury. *Connelly v. Greenfield Sav. Bank,* 192 Iowa 876; *German Am. Nat. Bank v. Kelley,* 183 Iowa 269; *Anthon St. Bank v. Bernard,* 194 Iowa 1090; *Mooers v. Stalker,* 194 Iowa 1354; *Farmers Nat. Bank v. Pratt,* 193 Iowa 406; *McLaughlin-Gormley-King Co. v. Hauser,* 195 Iowa 224; *Commercial Sav. Bank v. Colthurst,* 195 Iowa 1032.''

Later, in the case of *First Nat. Bank of Montour v. Brown,* 197 Iowa 1376, this court further said:

''To sustain the proposition advanced by the appellant in the instant case, we would be compelled to say that the defendant has an inherent right to have a jury pass upon his claim, or that the credibility of an uncontradicted and unimpeached witness in all cases presents a jury question. We cannot make such a pronouncement.''

We deem the correct rule to be that, where the bank, being a corporation, attempts to establish itself as an innocent purchaser, it must negative notice, first, by the officer or employee who had the transaction in charge of purchasing the paper, and second, by any other officer of the bank who had to do with said transaction, or who had knowledge that such a transaction was under consideration or contemplation; and if notice be squarely negatived by these parties, if their testimony is uncontradicted, and if the circumstances shown in the case do not tend to impeach their testimony, then the court will be warranted in

holding, as a matter of law, so far as this question is concerned, that the bank was an innocent purchaser.

In the instant case, we have a somewhat different situation. The director Marcey was dead at the time this case was tried in the lower court. There is no showing that he knew of or had anything to do with the transaction; and, as before stated, the only testimony inferentially negatives his knowledge of the transaction.

There is a dearth of authority on this question; but, after a somewhat laborious search, we find the case of *Merchants Nat. Bank v. Peterson,* 109 Neb. 407 (191 N. W. 690). In that case, the president of the bank was in a serious condition physically, and unable to attend court. While an attempt was made to take his testimony, it was excluded from the record, and the court draws this conclusion:

"But it is not necessary in every instance where the defense of fraud is made, as in the instant case, that the holder of a note make this proof out of the mouth of each and every employee or agent who has had some part in the taking of the note. The good faith, or lack of good faith, of the holder of negotiable paper, like any other question of fact, may be susceptible of proof in a variety of ways. * * * Cases may frequently arise where an officer or agent of a bank may be unable to testify because of sickness; he may be absent from the jurisdiction of the court, and his whereabouts be unknown; or his lips may be sealed in death. The rule invoked by appellant would defeat justice, and we cannot adopt it as the law of this state."

We are of the opinion that the above quotation from the Nebraska case states a sane and sensible rule. We do not deem the testimony of the witness Marcey in any way necessary, under the circumstances of this case, to establishment of the fact that the bank was an innocent purchaser.

II. It is further urged that there is certain other testimony in the record, aside from matters discussed in the previous division, that should take this question to the jury. To that evidence we will give some attention.

It appears that, at the time the bank bought this note, it was a holder of three notes of the Union Telephone Company,

one of which was indorsed by Thorne, another indorsed by

2. Bills and
notes: holder-
ship in due
course: evi-
dence: jury
question.

Sayers, and a third note, of about $1,100, which was secured by collateral consisting of 176 shares of that company's stock and two shares of development stock. Apparently, from the record, the telephone stock was considered worthless; but the shares of the development stock are shown to be worth about $1,000 each.

Boies, the owner of that telephone company, in trading the telephone company to Dutton, needed the aforesaid shares of stock. He proposed to turn in the $4,000 note sued on herein, to apply as far as possible on these notes just described, which was done, settling the first two of said notes, and leaving a balance of something like $280, which was applied on the $1,100 note. It is claimed that, because Thorne was an officer of the bank, and Sayers was a customer of the bank, said bank had an ulterior motive in taking this note of Dutton's, which would not be due for a year, in place of the first two above described notes, which were shortly due; and therefore that the transaction on the part of the bank was not in good faith. By what line of logic this conclusion is reached, we are unable to determine. There is some testimony from some of the officers of the bank that they were not interested in and made no inquiry about the deal made between Boies and Dutton, and one of the officers said that it was no concern of theirs, etc. It is not shown that the bank or any of its officers had knowledge of any suspicious circumstances which would put them on inquiry, and therefore they were not bound to make the inquiry. Starr, the cashier, in his testimony says, in response to questions, that, in handling as many daily transactions as he did, unless it was something out of the ordinary or of unusual kind, he would not remember it; but he did recall that the purchase of this note had been spoken of. It is urged that this is a circumstance in itself sufficient to take this case to the jury.

The Union Telephone Company was a losing proposition, and some testimony shows that Thorne knew of this fact. He also knew that Boies had traded the telephone company to the defendant Dutton, and that this note in suit was part of this consideration; but he knew nothing whatever of the details of

the transaction between Boies and Dutton. It is urged that these are circumstances which should have aroused suspicion that demanded inquiry. It is further urged that the bank officers studiously avoided making any inquiry as to the details of the transaction between Boies and Dutton.

There are a few other minor circumstances which are urged, that should be considered on this question; but we are of the opinion that none of these circumstances are sufficient, nor are all of them combined sufficient, to produce the condition under which the case should be sent to the jury. It seems to us that the history of the buying of this note shows an ordinary business transaction. These facts referred to are not such that they can be said to be such suspicious circumstances as would take the case to the jury.

Having carefully reviewed the record in the light of what has just been said herein, we are of the opinion that the ruling of the district court in directing a verdict in favor of the plaintiff was correct; and the same is, therefore, affirmed.—*Affirmed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.