SALEM TRADING & FINANCE CO. *vs.* JOHN PETERSON.

MARCH 8, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)   Negotiable Instruments.   Evidence.   Fraud.*

On question whether plaintiff was a holder for value of trade paper evidence properly having gone in of plaintiff's knowledge of similar frauds perpetrated in connection with other paper of payee taken by it, fraud in the instant case practiced upon defendant by payee, could be shown.

*(2)   Negotiable ·Instruments.   Evidence.   Fraud.   Notice.*

While evidence that holder of trade paper had knowledge of frauds perpetrated in connection with other paper of payee taken by it, did not prove knowledge on holder's part that the paper in suit represented a fraudulent transaction, it was one of the circumstances from which the jury might be justified in finding that holder should have made further investigation before taking the paper.

*(3)   Negotiable Instruments.   Holder for Value.   Notice.*

Where signature on negotiable paper was genuine though procured by fraud' and plaintiff was a holder for value without actual knowledge of any infirmities as between payee and maker, the fact that plaintiff had knowledge of specific dishonest dealings connected with other paper of payee transferred to it previously, warranted the submission of the facts to the jury to determine whether plaintiff was a taker in good faith.

ASSUMPSIT.   Heard on exceptions of plaintiff and denied.

BARROWS, J.   This was an action of assumpsit upon a trade acceptance for $288, dated July 15, 1924, and payable September 15 thereafter.   Plaintiff formerly had purchased such acceptances from Asbestos Ltd. among others.   The evidence shows that the defendant's name is signed to a certain order for material;  that there was fraud in connection with the securing of such order and that defendant never actually ordered the goods for which this acceptance purported to have been given to Asbestos Ltd.   The goods according to the sales slip were sold on July 15.   The acceptance bears the same date and between July 18 and 23 it was transferred to plaintiff in part payment of a prior indebtedness for goods sold to payee by plaintiff.   No investigation was made by plaintiff concerning the paper except to ask Asbestos Ltd. whether the acceptance represented goods actually sold, to which it replied by giving plaintiff the written order for the merchandise and a bill of lading showing that the goods had been shipped to defendant.

Plaintiff claimed to be a *bona fide* holder for value before maturity and without notice of equities between the payee and the maker.   It claimed that defendant could not offer evidence of fraud practiced upon him by Asbestos Ltd. It being shown that plaintiff knew of similar claims of fraudulent sales before taking the acceptance, evidence of fraud on defendant was admitted as bearing on the question whether plaintiff was a *bona fide* holder.   There was a verdict for defendant and after the trial justice had denied the motion for a new trial, plaintiff brought the case here on exceptions (1) to the alleged erroneous admission of evidence concerning plaintiff's knowledge of similar complaints and concerning the fraud incidental to the procuring of the trade acceptance from defendant;  (2) to the refusal to grant a new trial;  (3) to the refusal to direct a verdict for plaintiff.

(1) Evidence properly having gone in of plaintiff's knowledge of similar frauds perpetrated in connection with other Asbestos Ltd. paper taken by it, we think the fraud in this instance could be shown. While it did not prove knowledge on the part of plaintiff that this was a fraudulent transaction it was one of the circumstances from which a jury might be justified in finding that plaintiff should have made further investigation before taking the note. *McLaughlin & Co.* v. *Hauser*, 195 Iowa 224.

(2) We have considered the case on the assumption that the (3) signature on the acceptance was genuine though procured by fraud of Asbestos Ltd.; that plaintiff was a holder for value before maturity and without actual knowledge of any infirmities in the paper as between the payee and the maker. The question then presented is whether the finding of the jury declining to consider plaintiff a *bona fide* holder is supported by the evidence.

Under the negotiable instruments law, Gen. Laws 1923, Ch. 227, Sec. 62 (3067), to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated if without actual knowledge of the infirmity or defect must have had knowledge of such facts that his action in taking the instrument amounted to bad faith. The application of this section of the act has been considered in *Interboro Brewing Co.* v. *Doyle*, 165 App. Div. 646; *McNamara* v. *Jose*, 28 Wash. 461; *McLaughlin &c. Co.* v. *Hauser, supra*. The section merely adopts the generally accepted common law rule that the purchaser of negotiable paper can not shut his eyes to surrounding circumstances and claim that because he had no actual knowledge of infirmities his title is unimpeachable. *Hallock* v. *Young*, 72 N. H. 416; 8 C. J. 504: The application of the principle is well stated in *Ward* v. *City Trust Co.*, 192 N. Y. 61, at 73: "While the courts are careful to guard the interests of commerce by protecting the negotiation of commercial paper, they are also careful to guard against fraud by defeating titles taken

in bad faith or with knowledge, actual or imputed, which amounts to bad faith when regarded from a commercial standpoint." That indorsees have been leniently treated is shown in the above citations. In *Setzer* v. *Deal*, 135 N. C. 428, knowledge of general charges against payee's honesty in business practices with evidence that the indorsee failed to inquire concerning the validity of a note the maker of which did business next door to the indorsee was held insufficient to prove bad faith. It is not inconsistent with leniency to distinguish between general knowledge or reputation of a payee's dishonest business practices and knowledge of specific dishonest dealings connected with paper transferred to an indorsee and similar to that which the payee is then offering. Previous business experiences would place the average man at once on guard in the taking of such paper and would produce investigation further than mere inquiry of the payee. It is true that commercial paper to be useful in business must be capable of passing freely to takers for value before maturity and that such takers ought not to be held to exhaustive inquiry and investigation concerning the inception of the paper. It is true, too, that the indorsee in the absence of peculiar circumstances may accept paper showing no defects on its face without being subject to defences available to the maker against the payee. We do not think, however, that business demands warrant the indorsee in failing to take steps called for by ordinary prudence to check up the payee's dealing with the maker concerning the proffered note when the indorsee has several times had experience with similar acceptances based on alleged sales which were denied. These are circumstances proper to submit to the jury in order to determine whether plaintiff was a taker in good faith. *Lytle* v. *Lansing*, 147 U. S. 59. In the present case while plaintiff in addition to payee's assurance got the written order and bill of lading, it admitted that a dozen to fifteen acceptances taken by it from Asbestos Ltd. had been repudiated by the makers and that suits were brought thereon. Some of the repudiations

were based, as here, on a denial of the purchase of the goods. Several occurred prior to the present transfer and were known when the present acceptance was taken. With this knowledge in the possession of plaintiff, we think the trial court correctly submitted to the jury the question whether at the time of taking this acceptance plaintiff was chargeable with knowledge of facts which made its action in taking the acceptance amount to bad faith. *Olstadt* v. *Lineham* (Alta.), 8 W. L. R. 152. We think the jury might infer that plaintiff's failure to make further efforts to verify the genuineness of the sale and acceptance was because of a suspicion that inquiry might disclose the very trouble which existed. *Jones* v. *Gordon*, 2 App. Cas. 616; *In re Hopper Morgan Co.* 156 Fed. 525; *Vaughn* v. *Johnson*, 20 Idaho, 669; *Link* v. *Jackson*, 158 Mo. App. 63, at 82. 8 Cyc. 506, states that no precise rule can be laid down to show what facts coming within the knowledge of the indorsee will amount to bad faith, that each case must depend upon its own particular circumstances, and that frequently the question is sufficiently doubtful to require submission to a jury. In this instance we think there was such doubt. The jury's finding for defendant was supported by the trial justice and our examination of the record indicates that such a view was not without support in evidence. The verdict having been approved by the trial justice, we see nothing to cause us to reverse his findings. The motion for a new trial was properly denied, as was also the motion for direction of a verdict.

All of plaintiff's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment on the verdict.

*Edward C. Stiness, Daniel H. Morrissey,* *Francis J. O'Brien,* for plaintiff.

*W. Louis Frost,* for defendant.